# CAPERTON v. MARTIN.

1. The lien of an execution creditor upon the personal estate of his debtor, when it has once attached, by the execution coming into the hands of the proper officer, is not divested, as between the debtor and his personal representatives and the creditor, by the taking and forfeiture of a forthcoming bond; but the execution issued thereon against the principal and surety, continues the lien of the first execution, although it is issued after the death of the principal obligor.

2. A coroner is not bound to notice the insolvency of a debtor's estate against which he has an execution; nor does the death of a debtor, whose estate is reported insolvent, destroy the lien of an execution when it has once attached upon his property.

WRIT of Error to the the Circuit Court of Jackson county.

Trover, by the plaintiff, as the administrator of Henry Norwood. At the trial, he proved property in the slaves in his intestate, and their sale by the defendant.

The defendant justified the sale under four executions, directed to him as coroner, under which he seized and sold the slaves. The executions were different in amount, but are all governed by the same principles, so that a statement of the facts connected with one, will be sufficient to show what questions were involved. Judgment 29th October, 1839; *fi. fa.* dated and issued 27th November, same year; received by the coroner 12th February, 1840, and returned the 15th April of the same year without any levy. An *alias fi. fa.* dated and issued the 24th April, 1840, was received by the coroner on the 28th of the same month, and on

the 23d of June, 1840, was levied on six slaves, which were re-plevied by a delivery bond to deliver them on the 1st Monday in July, then next. This bond was returned forfeited, on the 6th of July. A *fi. fa.* on this bond, dated and issued the 30th July, 1840, was received by the coroner on the 3d of August, and levied on the 14th of August of the same year, upon the slaves sued for, of which only two were included in the former levy. It was also in evidence, that Norwood died on the 14th July, 1840: administration was granted to the plaintiff on the 5th August of the same year, and soon afterwards the estate was re-presented insolvent.

The plaintiff, as administrator, received from the defendant the excess produced by the sale of the slaves, beyond the sums suffi-cient to satisfy the executions.

On this proof the court instructed the jury, that the executions issued after the death of Norwood, were regularly issued and the coroner was justified in seizing and selling the slaves, by the au-thority given by them.

The plaintiff excepted, and now assigns this charge as error.

ROBINSON, for the plaintiff in error, argued,

1. The levy of the first executions and the giving of the delive-ry bonds, operated as a satisfaction of the judgments; therefore, all the liens created by them were discharged by the levy and bond. [Aik. Dig. 171 § 66; 1 Wash. 20, 2d ib. 551; 7 John. 428; 12 ib. 207; 4 Mass. 402; 1 Wash. 92; 2 ib. 189; 4 Bibb 532; 2 Lord Raym. 1072; 3 Howard, 417; Lusk v. Ramsay, 3 Mum. 417; ib. 308.]

2. Immediately upon the grant of administration to the plain-tiff, he became invested with the title to the personal estate, of his intestate and the executions issued on the forfeited bonds after Nor-wood's death, were irregular and void, and therefore afford no pro-tection to the defendant. [12 Mass. 309; 4 S. & P. 249, 250; 1 Salk. 319; Woodcock v. Bennett, 1 Cow. 711; Pearce v. Hubbard, 10 John. 416; Loop v. Bentley, 5 Wend. 276; 2 Conn. 702; 10 Wend. 206; 2 Saund. 27, note 11; ib. 223; 1 Lord Raym. 245; 2 ib. 768.]

3. The executions issued on the bonds, can have no relation back to the day of their forfeiture, so as to create a lien. [Dig. 278, § 114; 165, § 36; 2 Binn. 174; 8 John. 348; 16 John 287; 17 John. 116; 4 Bibb, 532.]

4. The estate was shown to be insolvent, and whenever such a case exists the lien is gone, because the statute declares all creditors shall be paid *pro rata.* [Digest 151, § 2; Royall's adm'r v. Johnson, 1 Rand. 421; ib. 438; ib. 478; Hale v. Cummings, 3 Ala. Rep. N. S. 398.

McClung, *contra*—insisted,

1. That the execution on the bond is neither void nor voidable because the duty is imposed on the clerk, and he is compelled to act under a penalty. [Digest 171, § 66.]

2. The lien once acquired by an execution, becomes specific and must continue. The statute just cited, shews, that the intention of the legislature that the second execution should be a mere continuation of the first, with the additional security of the securities to the bond. This intention is further evinced by another statute, which requires executions issued after one returned in vacation, to be tested of the return day of the previous execution. [Digest 163, § 21.]

3. If the defendant die within the year and the day, execution may issue after, provided it can be tested, according to the practice of the court, before his death. [10 Wend. 211; 1 Arch. Prac. 282; 2 ib 90; 7 Term 20; 6 ib. 368.] So in the present case, if the last execution, had actually issued before the death, the goods would have been bound, although the coroner did not receive the execution until after, If an execution can be tested back there is no reason why the same effect should not be given to it without such an evasion. That an execution may bind the goods in the hands of the administrator, though issued after the death, is shown by the Digest, [160 § 5,] where such a course is authorised when the defendant dies in custody charged in execution.

4. The effect of a forthcoming bond in this State, and a delivery bond, in Virginia, is essentially different. There, a new judgment is rendered on the bond, but here, the execution goes on the return, and seems to be a mere continuation and extension of the previous process. A mere levy which is unproductive does not discharge a lien, as in the case of property levied on and claimed by another. [2 S. & P. 278.]

5. As to the lien being discharged by the insolvency of the estate, this question cannot arise, because in a suit at law, the necessary facts cannot be ascertained. The proposition however

is denied, because the levy is a specific appropriation of the defendant's property for the payment of the debt.

GOLDTHWAITE, J.—1. We held in the case of Hopkins v. Land, [4 Ala. Rep. N. S. 427] that a forthcoming bond was neither a satisfaction nor a discharge of the judgment, but that the plaintiff might elect after the forfeiture of such a bond, to proceed upon it, or sue out an *alias* execution. And in Campbell v. Spence, [4 Ala. Rep. N. S. 543,] we considered, that the taking of such a bond was not a discharge of the liens acquired by a judgment. These decisions, when connected with the principle settled in Collingsworth v. Horn, [4 S. & P. 237,] are conclusive of all but one of the questions raised here.

In Collingsworth v. Horn, the facts were precisely similar to those now before us, except that here, there was a partial levy; and the subsequent execution is not in terms, an *alias*, inasmuch as it issues on a forthcoming bond. The question then is, whether these circumstances make such a distinction between the cases as to render the execution inoperative. In our opinion, they do not. Under the principle settled in Collingsworth v. Horn, the plaintiff, if no levy whatever had been made, could have sued out an *alias* execution, and then the lien of the original execution would have been continued. Or, under the principle settled in Hopkins v. Land, he might have abandoned his rights under the bond, and have sued out an *alias* execution. In either case, the right of the plaintiff would have been preferred to that of the administrator.

It certainly is a novel proposition that a matter evidently intended to furnish an additional security to the creditor, should be so construed as to work him an injury; and yet, such would be the case here, upon the insolvency of the surety on the bond, if the law is, as supposed to be by the counsel for the plaintiff in error. Conceding, however, that the surety is solvent, there is no reason why the creditor should be forced to pursue him, when there are effects of the principal debtor, bound by the previous lien of the execution. As the creditor could have sued out an *alias* execution, which would have the effect to continue the lien, even if no levy whatever had been made, we think the law gives the same effect as between the debtor or his personal representative and the creditor, to that subsequently sued out on the forthcoming bond.

2, It appears that Norwood's estate was represented as insolvent by his administrator, previous to the levy; but the coroner was not bound to take notice of that fact, even if it would have the effect to divest the lien of the execution. My own opinion is, that the statute respecting insolvent estates, [Digest 151, § 2,] was intended to provide for the *pro rata* division of all the effects between the creditors, and that all inchoate or imperfect liens, arising merely by operation of law, are destroyed by it; and such was considered to be its effect upon a lien created by an attachment. [Hale v. Cummings, 3 Ala. Rep. N. S. 398.] But on this point, the majority of the court think otherwise, and hold that where execution upon a judgment is begun, the lien upon the personal estate is fixed and absolute, and is not destroyed by the subsequent death and insolvency of the defendant. They distinguish this from an attachment, as there the plaintiff has no right to subject the property attached, to sale, until a judgment is obtained, and this being prevented by the statute the lien is at an end.

Our conclusion is, that there is no error in the record, and the judgment is affirmed.