## HARBINSON ET ALS. vs. HARRELL ET ALS.

1. When the mortgagor of personal property remains in the actual possession of the property before the law day, *his entire interest therein*, consisting of the usufruct of the property until the law day and the equity of redemption, may be sold under execution at law against him.

2. The plaintiffs in execution are entitled to precedence over a stranger to whom, after the levy, the mortgagor has given an order on the mortgagee, which has been accepted by the latter, to be paid out of the surplus fund after satisfying the mortgage debt.

3. The lien of the plaintiffs in execution is not affected by a sale of the property made by agreement between the mortgagor and the mortgagee, after the levy, and before the law day. In such case the plaintiffs would be entitled to recover the value of the hire of the property from the time of the sale until the law day, and to have an account taken of the value of the property on the law day.

4. When the mortgagees file a bill to separate their interest from that of the mortgagor, after the levy of an execution against the latter on the property, they cannot be allowed out of the mortgage fund reasonable solicitor's fees incurred by them in the prosecution of the suit.

5. A deed of mortgage may properly be admitted to record, on proof by the subscribing witness that he saw the same signed, sealed and delivered on the fourth day after its date. When it is not shown that any fraud was intended, nor that any injury was done, or attempted, by the wrong date, the probate will be held a substantial compliance with the statute, although it does not strictly accord with the form prescribed by it.

6. In taking an account of the mortgage fund after a sale of the property, the plaintiffs in execution cannot take advantage of usury in the mortgage debt.

ERROR to the Chancery Court of Lowndes. Tried before the Hon. J. W. Lesesne.

THE bill alleges that the complainants, Harbinson et als. became the securities for one John Powers, on two promissory notes executed by him to one George M. Reese, for borrowed money, dated on the 17th July, 1848, and due January 1, 1850, for the aggregate sum of $7,114 39; that to secure complainants against their liability on said notes, said Powers executed

to them a mortgage, or deed of trust, on certain lands and negroes, which was duly recorded in the proper office; that said mortgage stipulated that said Powers should retain the possession of all the mortgaged property until the maturity of the notes, and on default being made in the payment of the notes, complainants were authorized to take possession of all the property, and sell the same after giving thirty days notice. A few days after the execution of the mortgage, four several decrees were rendered in the Court of Probate of Lowndes, in favor of Martha P. Harrell, Mary R. Harrell, Joseph P. Harrell and Francis M. Harrell, against said John Powers, their late guardian. On these decrees several executions were issued, and placed in the hands of the sheriff, which were levied on sixteen of the mortgaged slaves.

The bill charges that the residue of the mortgaged property is insufficient to satisfy the mortgage debt, and that a sale of the slaves by the sheriff would cause irreparable loss and injury to complainants. It prays an injunction restraining all further proceedings under said executions; that the property levied on may be delivered up to complainants, on their indemnifying said plaintiffs in execution; that an account may be taken of the mortgage debt, and the property sold to satisfy said debt, charges, &c.

The answers of the defendants admit the execution of the mortgage, but they insist that it was intended to hinder, delay and defeat them in the collection of their judgments against said Powers, which were rendered only a few days after the execution of the mortgage. They object that the mortgage was not proved and recorded as required by the statute, and that it was not executed on the day of its date. They also state, that on December 21, 1848, (the day before the answers were filed,) complainants had sold the whole of the mortgaged property, on a credit of twelve months, which sale, they insist, was without authority, and renders complainants liable to them for the hire of the negroes from the time of sale until the 1st January, 1850, when the mortgage debt fell due, and for the excess of the proceeds of sale over and above the mortgage debt.

The defendants afterwards filed a cross-bill, praying that the sale might be set aside, and a re-sale had to satisfy their judgments; that said mortgage might be decreed null and void as to

Harbinson et als. v. Harrell et als.

them; and that complainants might be made to account with them. An amendment to the cross-bill brought in S. Gresham as a defendant thereto, alleging that he claimed an interest in the mortgage fund, under a written order executed to him, by said John Powers, after the levy of the plaintiff's execution, which order had been accepted by Harbinson et als., to be paid out of the mortgage fund after satisfying their debt. And a further amendment set up usury in the mortgage debt, and insisted that said mortgage, if valid at all, was good only for the amount of money actually borrowed from said Reese, with lawful interest thereon.

The mortgage bears date July 17, 1848, and in the certificate of probate, it is certified that the subscribing witness proved that he saw the same signed, sealed and delivered on the 21st July. In other respects the certificate is formal.

The decree of the chancellor, and the cross assignments of error, will be readily understood from the opinion.

STONE & JUDGE, for plaintiffs in error:

1. The record in this case clearly shows that the defendants were proceeding to sell, not the possessory interest of Powers in the slaves merely, but the entire property, on the alleged ground that the mortgage was fraudulent. In this state of the case, Harbinson et al. had a clear right to file their bill restraining the sale, and thus separate the mortgage from the possessory interest.—Williams v. Jones, 2 Ala. 314; Marriott & Hardesty v. Givens, 8 Ala. 694.

2. No effort has ever been made to realize the possessory interest, or make it available. The bills, answers and proof show that the defendants have all the while sought the entire property, on the alleged ground that the mortgage was fraudulent. They made no effort to obtain the possessory interest before the sale was made, although some two months had elapsed.

3. The decree of the chancellor is wrong, in charging plaintiffs in error with the value of the property on the 1st January, 1850. If they are chargeable at all, it is only with the actual injury done the defendants. What is that injury? If the injunction had not been obtained, the defendants would have sold the property in November or December, 1848, and could not possibly have realized the enhanced price caused by the rise of

cotton in January, 1850. Even on this view, the utmost Harbinson et al. could be charged with is the difference between the mortgage debt and what the property would have commanded at the time the Harrells proposed to sell. This could not have been more than the value of the hire.

4. The chancellor has certainly decreed against Harbinson et al. two or three times for the same interest. He first holds them liable for the surplus sales, secondly, for the value of the possessory interest, and thirdly, for the difference between the mortgage debt and the value of the property on the 1st January, 1850. The surplus sales are, of course, covered by the difference between the debt and the value of the property on the 1st January, 1850, and for that item they are clearly twice charged. Moreover, the surplus was caused by the sale being made on credit, the property bringing, in the opinion of the witnesses, 20 per cent. more than it would have commanded in cash, and this sum should stand against the hire.

5. The plaintiffs in error having the right to enjoin the sale and separate the mortgage from the possessory interests, it seems clear that they should be allowed their reasonable expenses and attorneys' fees, that expense having been cast upon them by the improper conduct of the defendants in error.

6. Usury is a personal defence, and can only be made by the party promising. He cannot be compelled to plead it.—Fenno v. Sayre & Converse, 3 Ala. 458.

7. The registration in this case was regular; but if slightly variant from the statute, it was sufficient to operate notice.—8 Ala. 356.

8. Whether Gresham shall have his order paid in preference to defendants in error, depends on the question how far the sheriff's levy operated a lien on the surplus. We contend that only the possessory interest, not the equity of redemption, is the subject of levy and sale under the execution at law.—Scott v. Scholey et al., 8 East 467; Wilkes v. Ferris, 5 Johns. 335; Marsh v. Lawrence, 4 Cow. 461.

9. There can be no sound reason given for the sale of an equity of redemption under execution at law. The invariable result is, 1st, a sacrifice of the equity; 2d, great injury, expense and loss to the mortgagee, by putting the property out of his reach. A rule of this kind ought not to be adhered to, even if former courts had so decided.

10. We maintain that our own adjudged cases, which seemingly countenance an opposite principle, can be regarded only as *dicta*.—Perkins & Elliott v. Mayfield, 5 Por. 182.

J. M. BOLING, *contra :*

1. Powers, the mortgagor, could not incumber the property after the receipt by the sheriff of the executions in favor of defendants in error and levy upon the mortgaged property, so as to defeat the lien thus created in favor of defendants; hence the order in favor of Gresham does not defeat or postpone defendants.—Burnet v. Dennison, 5 Johns. Ch. 35. Had the mortgagees paid the order, they could not tack it to the mortgage.—Iughes v. Worley, 1 Bibb, 200; Colquhoun v. Atkinson, 6 Iun. 550; 2 Vern. 520; 2 Bridg. Dig. 341, § 135.

2. Defendants were entitled to the value of the possessory interest in the slaves mortgaged, from the time of the levy, provided the mortgaged property was sufficient to pay the mortgage lebt. The power given to the mortgagees after that time to sell, nd the sale by the mortgagees, cannot defeat the rights of defendants to the value of the possessory interest; neither can it lefeat the rights of defendants to have the property valued, 1st f January, 1850. If the mortgagees saw proper to sell before he law day, it was at their own risk.—See Faure v. Winans, 1 Iop. 283; Coote on Mort. 561; Ib. 319; Dibly v. Craggs, Amb. ;12. If the mortgagees had retained the slaves until 1850, instead of selling them, they would have been liable for hire.—2 . Mon. 61; 4 B. & H. Dig. 393, § 11. It follows that defendants are entitled to an account of the possessory interest, from he time of their lien to January, 1850, and the value of the property at that time, (Jan. 1850,) as well as to an account of ie surplus, after the mortgage debt shall have been paid.

3. Reasonable cost is all the mortgagees are entitled to out of the property, after paying the debt. They are entitled to nothing for personal services.—Breckenridge v. Brooks, 2 Marsh. 339; Coote on Mort. 353.

4. Although usury is a personal privilege, and although a mere stranger cannot insist upon the invalidity of a usurious mortgage, in respect to which he is neither a party nor a privy, but as defendants in error succeed to the rights of the mortgagor, after the mortgage debt is satisfied they may set up

usury. The mortgage debt should be the money loaned by Reese to Powers, and lawful interest thereon.—Port v. Dart, 8 Paige, 639; 6 Gill. & J. 18; 3 Edw. 195; 4 Barb. & Har. Ch. Dig. 392, § 21.

CHILTON, J.—1. The law is stated in this State that the mortgagor of personal property, remaining in the actual possession before the law day, has such an interest therein as is subject to levy and sale under execution at law. This rule was first asserted in McGregor & Darling v. Hall, 3 S. & P. 397, and has never since been departed from. The difficulty with me has been the *quantum* of the interest thus to be subjected. Is it the mere *usufruct* until the law day, or this, with the mortgagor's equity of redemption? Upon a careful review of the several decisions of this court, I am satisfied that they contemplate the sale of the entire interest of the mortgagor, where his interest is accompanied with the possession. In Marriott & Hardesty et al. v. Givens, 8 Ala. 706, it was said, that "this right of possession for a determinate period is subject to levy and sale, *and carries with it the equity of redemption.*"—See also, Perkins & Elliott v. Mayfield, 5 Por. 182; Williams & Battle v. Jones, 2 Ala. 314.

2. In this case the mortgagor, by the terms of the mortgage, was entitled to retain the actual possession of the property until the first day of January, 1850, and as the levy was made long before that period, it follows that a lien attached in favor of the plaintiffs in execution, which no subsequent act of sale *before* the law day could divest. And this lien, being older than the order given by Powers, the mortgagor, to Gresham, and accepted by the mortgagees, to be paid out of the surplus after satisfying the mortgage debt, must necessarily take precedence over it. The plaintiffs in execution must therefore be preferred to Gresham.

3. We have said the lien of the plaintiffs in execution was not affected by the sale of the mortgaged property, made by agreement between the mortgagor and mortgagees *before* the law day arrived. This being the case, it follows that the plaintiffs in execution are not concluded by that sale. They cannot be placed in a worse condition by the act of third persons, in which they did not participate. They have the right, therefore, to recover the value of the hire of the property levied upon, from the

time of the filing of the original bill until the first day of January, 1850, with interest thereon, and to have an account of the value of the slaves at that time, when by the terms of the mortgage they were, upon the forfeiture of the condition by the mortgagor, to be devoted to the payment of the mortgage debt. This is what the decree of the chancellor, upon a proper construction of it, gives the plaintiffs in execution. The decree, as we understand it, first adjudges the surplus, after satisfying the mortgage, to the plaintiffs in execution, and the hire from the filing of the bill until the law day, and then proceeds to lay down the rule by which the surplus is to be ascertained; namely, by a valuation of the property, as of the first day of January, 1850.

4. The mortgagees claim that they should be allowed reasonable solicitors' fees out of the fund, in addition to their mortgage debt, for filing the bill to separate their interest from that of the mortgagor, which latter was subject to levy and sale. It is sufficient to remark, that such expenses are not provided for by the mortgage deed, and that these fees were incurred by the mortgagees to protect their own interest, not against the unlawful act of the mortgagor, or of any one else, but merely to render their security more certainly available; or it may be, to enable the mortgagees, by an agreement with the mortgagor, to obtain possession of the property and dispose of it before the law day. Such fees are clearly distinguishable from those costs necessarily incurred by the mortgagees in maintaining the title to the estate, &c., which are ordinarily allowed as a charge upon the mortgaged estate.—Coote on Mort. 392.

5. Having arrived at the conclusion that the record presents no error prejudicial to the mortgagees, we turn to consider the errors assigned by the plaintiffs in execution.

The first is, that the mortgage deed was not proved according to the statute, and that consequently its registration under an invalid probate does not amount in law to notice. The objection raised to the probate is, that the witness does not swear that he saw the deed signed and delivered on the day it bears date, but four days subsequent to that on which it appears to be dated. It does not appear that any fraud was intended, or that any injury was done or attempted to be effected by the wrong date. The certificate of probate corresponds substantially with the facts of the case, and although it does not strictly accord with

the *form* given in the statute, yet there is not such a *substantial* departure as will vitiate it.—Hobson v. Kissam & Co. et als., 8 Ala. 357.

6. The only remaining question is, whether the plaintiffs in he executions can take advantage of the usury in the mortgage debt; and were this an open question in this court, we should be trongly inclined to hold, that as to the unlawful per cent., the nortgage would be without consideration, and to consider the actual amount borrowed, with the interest thereon, as constituting the amount to be retained by the mortgagees out of the proceeds of the mortgaged estate. But the rule has, we think, been oo firmly established by the previous decisions of this court, to he contrary, now to be departed from. In Cook & Kornegay v. Dyer, 3 Ala. 643, it was held, that " the statutes against usury were intended for the benefit of the borrower; they confer a personal privilege on him which he may waive, and if he does, no ne else can take advantage of it." The same doctrine was eld in Sayre & Converse v. Fenno, 3 Ala. 458. The decree f the chancellor is in accordance with the law as declared by these adjudged cases.

We are unable to percieve any error in the record, and the decree is consequently affirmed. Let each party pay half the cost in this court.