### DANIEL S. MERCEIN AND OTHERS v. DAVID L. BURTON.

The legal proposition that a vendee, under a conveyance fraudulent against creditors, in the actual adverse possession of personal property for more than two years from the date of the judgment of the creditor, can claim the protection of limitation, is sound both on principle and authority.

An execution is not a lien on personal property, from the date of its issuance, under the Act of 1842, now in force.

Appeal from Houston. Tried below before the Hon. John H. Reagan.

*S. A. Miller*, for appellants.

*Yoakum & Taylor*, for appellee.

HEMPHILL, CH. J. The appellants had two separate executions against John J. Burton, each of which was levied upon a separate negro boy. Both of the boys were claimed by the appellee, David L. Burton, and he asserted his claim in the mode provided by the Statute. The judgments, upon which the executions issued, were recovered in 1849. In the same year the said John J. Burton, by deed duly executed, conveyed a large amount of property, including these slaves, to his sons, Samuel A. and David L. Burton. The deed was recorded shortly after its execution. Samuel A. departed this life in 1850, and his father, the said John J., having administered on his estate, sold, under the order of the County Court, the undivided interest of the said Samuel A., in the property included in the conveyance. David L., the appellee, became the purchaser, thus acquiring the whole title. The levy was not made until 1854. The appellee claimed under

the deed, and the appellants averred and insisted, that the deed was fraudulent and made to hinder and delay creditors. Evidence was introduced by the parties respectively, to sustain and rebut the charge of fraud, and the Court, in a full and lucid charge, instructed the jury upon the law as applicable to the facts on that point. But it will not be necessary to refer either to the facts—their preponderance one way or the other, —or the law arising upon them, as touching the question of the fraud in the transaction between John J. Burton and sons. For if it be admitted to be true, as charged by the plaintiffs, that the deed was conceived and consummated in fraud of the rights of creditors, yet the Statute of Limitations has, it is believed, interposed an effectual bar to the assertion of their rights. And in this connection, the question of possession or with whom remained the possession of the property, becomes as important as it was in relation to the main point, viz: whether there was fraud designed against the creditors.— The main facts in relation to the possession, control and ownership of the property are, that the father and sons continued to live together after the conveyance for at least the greater portion of the time ; that after the death of Samuel A., his father, the said John J., administered on his estate, including in the inventory the property embraced in the conveyance, and selling the same under the sanction of the County Court. The appellee, David L., had, as owner, mortgaged or pledged some of the negroes two or three times, and afterwards redeemed them. That the appellee, David L., had the management and control of the farm and negroes since the death of S. A.; and that he and S. A. had such management and control from the time of the purchase, up to S. A.'s death.

There was evidence, however, that the father sometimes gave orders to the negroes, and that when they all lived together, all gave orders about the property, &c. On the question as to the effect of the Statute of Limitations on the rights of the parties, the jury were in effect instructed, that the sale

being from father to sons who resided with him, it might be difficult to determine whether the possession of the property was changed from one to the other, and they would be under the greater necessity of looking to all the features and facts of the case, to ascertain whether the possession and control were in the father or sons. This was charged with especial reference to the question of fraud, but it is applicable to the instruction in respect of the limitation. The jury was charged especially on this point, that if the possession and apparent ownership remained in Samuel A. and David L. Burton, or either of them, since the purchase, and more than two years have elapsed between the date of the judgments of appellants and the levy of the executions, they should find for defendant, though they might believe the sale was intended by the Burtons to defraud creditors ; that the deed, if accompanied by possession, would be sufficient to establish the ownership ; but the Statute of Limitations would not run in favor of the appellee, unless he had, with the deed, the possession and control of the property. The question of possession was fairly and fully before the jury on these instructions. The evidence was conflicting, but it is the peculiar province of the jury to reconcile the discrepancies of testimony, and the verdict cannot be disturbed on the ground of discrepancy and conflict.— Their finding is not without evidence, nor in this case is it believed to be against its preponderance.

The legal proposition that a vendee, under a conveyance fraudulent against creditors, in the actual adverse possession of personal property for more than two years from the date of the judgment of the creditor, can claim the protection of limitation, is sound both on principle and authority. It has been said that the Statute would commence to run from the date of possession by vendee, and will not be delayed until the recovery of the judgment by the creditor. (Reeves v. Dougherty, 7 Yerger, 222.) This was repudiated by the same Court in a subsequent case, (1 Humph. 346,) and it was held that the

Statute would not run until after recovery of judgment. If this be put upon the ground that until judgment the creditor cannot effectually assert his rights, it would operate, under certain circumstances, to the prejudice of creditors. But without mooting questions not necessary to the decision, and without intending to question the position that the date of the judgment should be the commencement of limitation, it is sufficient to say that the judgment in this case was recovered some five years or more before the date of the levy; that the conveyance had been on record for five years; that the possession, as the jury established by their verdict, was with the vendee; and there can be no question that the defendant in this case can claim the benefit of limitation, if it can be claimed in any case where the possession commenced and was held under a grant fraudulent as against the rights of others.

A question frequently made in cases of this character, is as to the discovery of the frand, and whether the Statute will run before or only after such discovery. But no such question can arise in this cause. The fact of the original ownership of the property by John J. Burton, its sudden transfer to his sons, characterized by circumstances which are regarded as *indicia* of fraud, &c: These were known as well at the inception of the transaction as afterwards. The conveyance was not secret. It was recorded in the proper office. The fraud, if any, was patent from the beginning, and no question can arise as to the time of discovery.

The appellants' counsel, in an argument prepared with much care and ability, has, among other points, insisted that the execution, when issued, had, by force of the common law, a lien upon all the personal property of the debtor, and that this lien has, by successive executions, been preserved. Without admitting or disputing or referring even to the doctrines of the Common Law on the subject of lien of judgments and executions, it will suffice to say that under the execution law of 1842, judgments are allowed to operate as a lien on the real

property of the defendant in the county where the judgment is
rendered, (Hart. Dig. Art. 1335,) but it is not declared that
the lien shall extend to personal property ; and the silence of
the law, under the circumstances, is equivalent to a declara-
tion that no such lien shall exist. *Inclusio unius exclusio al-
terius est*, is an ancient but sound maxim of law.   The conclu-
sion that no lien was intended to be attached to judgments
and executions, over personal property, is very strong from
the law of 1842 considered alone, and with reference to the
positive provision in relation to real estate, without including
personal property.  But if we examine the previous legislation
on this subject, the conclusion that the Legislature intended
that under the law of 1842 no lien should attach to personal
property, will be irresistible.   Under the execution law of
1839, final judgments operated as a lien upon the lands of the
defendant, and executions as a lien upon his personal property
and slaves.   (Art. 1286.)   Under the execution law of 1840,
judgments operated as a lien on all the property of the defend-
ant in the county where the judgment was rendered.   (Art.
1209.)   Thus stood the law until 1842, when it was declared
that judgments should operate as a lien upon the real estate
of the defendant in the county.   It appears that the lien of
judgments and executions has been made matter of statutory
regulation, and the provisions of previous laws, giving a lien
on personal property, having been excluded out of the law of
1842, we must conclude that this was done with design, and
that it was intended the lien should no longer exist.   The
position that the Statute could not run, the lien having been
preserved by the executions, is not supported by the law.

The legal proposition in the charge, that adverse possession
by a vendee or donee, under a title obtained with design to
delay and defraud creditors, will operate as a bar under the
Statute of Limitations, is equally well supported by principle
and authority.  (Porter's Lessee v. Thomas Cocke, Peck, R.
30 ;  7 Yerger, 222 ;  1 Humph. 346 ;  Id. 353 ;  7 Id. 367 ;  24
Wendell, 587 ;  7 Johns. Chan. 122.)

There being no error, the judgments are affirmed in both cases.

Judgment affirmed.