## R. H. HARGROVE v. L. C. DE LISLE AND ANOTHER.

1—A person who bought land while it was subject to the lien of a recorded
judgment was chargeable with constructive notice of such lien; and such
a purchaser, in 1864, was also chargeable with notice of the laws then in
force suspending the collection of debts by execution until six months
after the close of the war, or twelve months after a treaty of peace.

2—By order of Provisional Governor Hamilton, and by Ordinance of the Con-
vention of 1866, and by Act of the Legislature of 1866, the collection of
debts by execution continued to be suspended until this court, by a judg-
ment rendered in February, 1868, (Jones v. McMahan, 30 Tex., 719,)
declared the unconstitutionality of the stay law of 1866.

3—Though a judgment creditor might be chargeable with negligence in not
having his judgment re-transcribed before its lien expired, yet a purchaser
who bought land of the judgment debtor while it was subject to the
lien of the judgment, and who thereby placed himself in the attitude of
the debtor himself, can not avail himself of such negligence of the
creditor.

4—This court does not affect ignorance of the historical act of secession, and
it recognizes the impracticabilty of executing the process of the United
States Courts after that act and down to the close of the war.

5—So, also, this court takes judicial cognizance that the war was not officially
proclaimed at an end by the President of the United States until the 20th
of August, 1866.

6—A levy in February, 1861, of an execution emanating from a judgment of
a United States Court, created a lien which subsisted, it seems, without
sale or further process, until the issuance of another execution, in May,
1867; and a person who, in 1864, purchased the land levied on was
chargeable at the time of his purchase with constructive notice of the
levy and its lien, and could only acquire title subject thereto.

7—A person who bought land in 1864, with constructive notice of such a lien, assumed, with respect to the land, the exact position of his vendor, the judgment debtor, and can not claim that the land has become exonerated of the incumbrance, by the failure of the judgment creditor to have the judgment re-inscribed before its lien expired. Had he bought the land after the lien had lapsed for want of a new registration of the judgment, he might have occupied a different attitude.

APPEAL from Harrison. Tried below before the Hon. J. B. Williamson.

The facts sufficiently appear in the opinion of the court.

*S. P. Donley,* for appellant. In Robinson v. Green, 6 Howard (Miss.) Reports, 223, it is said that a judgment is a lien, and it can only be defeated by showing that it has been lost by gross negligence, or by giving time; and the showing for this purpose must come from the party who wishes to avoid it. In the case now under consideration, the judgment may not have operated as a lien, because not recorded; but it is contended that a levy on land by virtue of an execution does create a lien of equal force as a judgment when recorded, while the statute required judgments to be recorded.

In Locke v. Coleman, 2 Monroe, 14, it is said, " there were several executions actually levied on the house and lot, and remained unsatisfied; and which, we conceive, operated as a lien thereon."

"Nothing but actual payment of the debt will release the property levied on from the lien by which it is held." Vincent v. Perry, 1 Harper, South Carolina Law Reports, 388.

In Hervey & New v. Champion, 11 Humphreys, 569, it is said that the lien of a judgment or execution would have rendered the deed in question a nullity as against the execution.

The lien of a plaintiff in execution is not affected by a sale of the property after the levy. Holberson v. Harrell, 19 Ala., 753.

The lien of a judgment which has not become dormant is not lost by laches in issuing execution. 27 Ala., 156.

It is held in Mercein v. Burton, 17 Texas, 207, that an execution is a lien after levy.

On these authorities it is submitted that the levy of the execution of Seaman, Peck & Co. against Bradfield, in 1861, created a lien on the lands and property levied on, and that lien existed until the execution was issued in 1867, and was again levied on the land.

Counsel proceeded to discuss the acts and ordinance suspending the statutes of limitation, and their bearings upon this case.

That a judgment of a United States court is a lien throughout the District, he cited Massengell v. Downs, 7 Howard, 760; Clements v. Berry, 11 Howard, 411; 6 Barr, 504; 6 Pa. State R., 504.

*W. Stedman, Poag & McKee* and *Penn & Burke,* for appellees, after stating the case, proceeded as follows:

The next question to which we will invite the attention of the court is, was the rendition of the judgment in favor of Seaman, Peck & Co. against William Bradfield & Co. a lien on the property in controversy? Second—was the levy of the execution that issued on said judgment a lien on said property? And, third, if it was, was it destroyed, waived or lost; and, if so, then, by whose act? To the first question we answer, it was not. (See Act of 14th of February, 1860.) To our mind it is clear that, according to this act creating liens, the simple rendition of a judgment in the United States Court, in this State, is not a lien unless the judgment was recorded in the county where it was rendered, or recorded in the county where defendants' land lay. The lien of judgments in the Circuit Court of the United States is derived entirely from the State laws, and when enforced as a lien, it is done on the authority of State laws. Legislative acts in relation to judgment, are rules of property, and, as such, binding on the Federal Courts. (Tarphy v. Hamer *et al.*, 9 Smeeds & Marsh's, Miss., 310.) In those States where the judgment and execution of State laws

create a lien only within the county in which it is rendered, a similar proceeding in the United States Circuit Court would create a lien to the extent of its jurisdiction. (Massingill v. Downs, 7 Howard, U. S. R., 766.) As to matters of liens, there is no difference between judgments of the State Court and those of the United States Court. (Andrews v. Wilks, 6 Howard, Miss., 554.) The process, both mesne and final, in the District and Circuit Courts of the United States, being confined to those of the different States in which they have jurisdiction, the lien of the judgment on property, within the limits of that jurisdiction, depends also upon State law, where Congress has not legislated on the subject. (William v. Benedict et al., 8 Howard, U. S., 111.) It is not pretended by appellant that there is any act of Congress affecting this question.

In answer to the second question, appellant in his brief says: " That a levy on land constitutes a lien, there seems to be no doubt." In support of this proposition he cites the cases of Mercein v. Burton, 17 Texas, 206; McMiller v. Butler, 20 Texas, 404; Branch v. Lowry, Galveston, 1868. The case of Branch v. Lowry we have not been able to see, but do not think it sustains the position contended for. The other cases cited by counsel, the court will see, upon an examination of these authorities, will not sustain the proposition as announced by counsel. In the first case the levy was made upon two slaves, in the second the lien existed by virtue of the judgment. Under our statute of liens, 14th of February, 1860, (which was in force when the judgment of Seaman, Peck & Co. against William Bradfield & Co. was rendered), creating judgment liens, there can be no liens on real estate, except in the manner and mode provided for by said act. If it should be held that the levy of said execution did create a lien on said property, then we say that it was a special lien and not a general lien, that a general lien is a matter of record of which the purchaser is bound to take notice. This is the principal difference between judgment liens and execution liens—the one is a matter

of record, and the other is matter in pair. (Meclin v. The Planters' Bank, 4 Howard, [Miss.,] 139.)

If the State of the country was such as the counsel would have the court to believe, the marshal and his deputies having abandoned their offices and gone into the army and the Federal Court suspended, then its records and proceedings in 1864 were not accessible to the appellee, by which he could possibly have notice of this judgment and levy of Seaman, Peck & Co. On the trial below the plaintiff did not attempt to show that the defendant ever had any knowledge of the existence of said judgment or levy.

We now say that Seaman, Peck & Co., by consenting to postpone the sale on the 5th day of March, 1861, lost their lien (if they had any lien by virtue of said levy) that had been acquired by the levy of the 5th of February, 1861. It has been repeatedly held by the courts of this country, that if an execution is delayed by the act of the plaintiff, it never acquires a lien as against one of a junior date, or if it does, the lien is gone as soon as the interference of the plaintiff commences. If the course of the law is arrested by direction or approval of plaintiff, it is the same as if no execution had issued. The legal presumption is, that the execution creditor intended to favor the defendant. Such holding up is fraudulent against junior judgment creditors. (Patton v. Hayter Johnson, 15 Ala., 21.) An execution held up by the plaintiff in the execution is constructively fraudulent as against subsequent execution creditors and purchasers. (Kellogg v. Griffin, 17 Johnson's R., 276; Starnes v. Woods, 11 Johnson, 111; Russell v. Gibbs, 3 Cowan's R., 394.) The lien of an execution after a levy, is destroyed by the interference or directions of the plaintiff to the sheriff to stay the sale as to subsequent execution creditors. (Wise v. Darby, 9 Missouri, 130.) A stay of execution pursuant to an order of the execution creditor may be considered a legal fraud against subsequent execution creditors. (Hickman v. Caldwell, 4 Rawle's R., 380; Commen v. Strembuck, 3 Rawle, 341.) If a senior judgment creditor

instructs the sheriff to hold up the execution issued, then it is fraudulent in law as against subsequent judgment creditors, and will postpone the lien of his judgment on the real estate of his debtor in favor of a junior judgment creditor. (Patton v. Hayter Johnson, 15 Ala., 18.) A failure to use due diligence to sell after a levy, and holding up of the sale by the execution creditor, discharges the lien so far as to protect a *bona fide* purchaser without notice from the debtor. (Patterson v. Owens, 6 B. Monroe, 488.) · In this case the judgment debtor sold the property seventeen months after the levy of the execution, and the purchaser was held to take the property discharged from the lien, the plaintiff having ordered the sheriff to stay proceedings thereon; and it was further held that, it not appearing that the purchaser from the judgment debtor had notice of the judgment or levy of execution, was to be considered a *bona fide* purchaser, his deed reciting the consideration paid in such purchase. A plaintiff by ordering or consenting to a return of his execution without a sale, might well be held to have lost the benefit of his levy in case of conflicting liens. (Riddle v. Bush, 27 Tex., 676.) A *bona fide* purchaser, in law, has equal rights with junior judgment creditors. If Seaman, Peck & Co. had a lien by virtue of said levy, and if said lien was not destroyed or lost by their consenting to hold up said sale, in order to have kept alive said lien, they should have applied for the writ of *venditioni exponas*, or an alias execution, having indorsed thereon the previous levies. (Lockridge v. Baldwin, 20 Tex., 307.) "A *venditioni*, with an alias *fieri facias* cause, is the proper writ to keep up the lien created by the levy." Yarborough v. State Bank, 2 Dev. 23.) Appellant in his brief says that DeLisle *knew* that the levy of Seaman, Peck & Co. existed. This also is a gratuitous statement of counsel, wholly unsupported by the record.

MORRILL, C. J.—Suit was brought by plaintiff to recover possession of, as well as to try the title to a certain tract of

land in the county of Harrison. Both parties claim title from one Bradfield, who was the owner of the land in controversy.

Plaintiff claims title by virtue of a deed of the United States marshal, dated 2d of July, 1867, and also a sheriff's deed, dated 7th of April, 1868.

The marshal's deed was based upon a judgment of the United States Court, rendered 9th of November, 1860, in favor of Seaman, Peck & Co. v. Bradfield, for $1420$\frac{23}{100}$. An execution on said judgment issued 20th of November, 1860, a levy made on the property on the 19th of December, 1860, and a re-levy on the 5th of February, 1861. A second execution, on the same judgment, issued 21st of May, 1867, a levy made on the 26th of May, 1867, and sale 2d of July, 1867.

The sheriff's deed was based upon a judgment in favor o Coleman & Co. v. Bradfield, in the District State Court of the county of Harrison, on the 23d of October, 1860, for $2169$\frac{10}{100}$ which was recorded in the office of the clerk of the County Court of Harrison county, on the 8th of November, 1860. Execution issued thereon on the 9th of March, 1867, a levy made 17th of March, and a sale by sheriff to plaintiff on the 7th of April, 1868, for $2005$\frac{82}{100}$.

The defendant's title was a deed from Bradfield to him, dated 2d of February, 1864, to the land, for the consideration of $15,000, and recorded and possession given.

By the act of 14th of February, 1860, a lien before that time created by a judgment of a court of record, upon the real estate of a judgment debtor, was made effectual by having the judgment recorded in the office of the county clerk of the county, which created a lien for four years. As the judgment of Coleman & Co. v. Bradfield was recorded on the 8th of November, 1860, a lien was created which did not terminate until the 8th of November, 1864. And since the defendant purchased the property, on the 2d of February, 1864, being eight months before the expiration of the lien, he is chargeable with constructive notice of this lien at the time of his purchase. He is also chargeable with notice of the laws

then in force suspending all laws for the collection of debts till six months after the close of the war, or twelve months after a treaty.of peace between the Confederate States and the United States, or until otherwise provided by law. (Dig., Art. 5125.)

When Governor Hamilton, as the agent of the commander-in-chief, took possession of the State, on the 26th of September, 1865, he forbid the collection of debts by execution. The Convention that met in 1866, on the 2d of March, passed an ordinance staying all executions till the adjournment of the first Legislature; and the Legislature passed an act regulating the collection of debts, the effect of which was to defer the collection of debts; and till this court, by a judgment rendered at Galveston in February, 1868, declared the unconstitutionality of this act, an execution could not issue upon the judgment of Coleman & Co. Coleman & Co. obtained an execution on the —— of March, 1868, which was the earliest practicable period.

They may be chargeable with neglect in not having the judgment retranscribed at the end of the four years from the 8th of November, 1860. But it does not become the defendant, or does it lay in his power, to charge them with negligence. He had acquired all the title that Bradfield had in the land more than six months before the lien expired by the registration. He bought the land subject to the lien that rested on it for the payment of the debts of Coleman & Co., and placed himself in the position of Bradfield, his creditor and the judgment debtor.

We now pass to the other judgment of the Federal Court, where the marshal levied on the property in February, 1861. It was taken into the custody of the law, there to remain till the judgment in the Federal Court was paid. The marshal's duty was to proceed to sell the property, and by law the sale would take place on the first Tuesday of March, 1861. We will not assume to be judicially, historically or experimentally ignorant of what every one, both old and young, knows; that on the 2d of March, 1861, a convention of men, assuming to act for all the people of the State, declared that Texas was no

XXXII—11.

longer a part and parcel of the United States; that from that time till the summer of 1865, he would have atoned for his rashness by the forfeiture of his life, who would have attempted to enforce any process emanating from the courts of the United States in Texas. And we judicially know that the war was not officially proclaimed at an end by the President of the United States till the 20th of August, 1866. In nine months from this time a second execution was issued by virtue of the judgment in the Federal Court, and the marshal brought into activity what had been in abeyance in consequence of the war for six years.

The records of his office apprized him that a previous levy on a former execution of this judgment had never been set aside, abandoned or prosecuted. And he well knew the cause; and he further knew that he was bound to exhaust the levy already made before he could make another.

The interests and well being of society require of all men obedience to the laws; and in order that laws may be executed, and courts of justice be effectual, the law imputes to every citizen a knowledge of what takes place in the courts of record in many instances.

When the levy on the land in controversy was made by the officer of the United States Court, a lien was *ipso facto* created by the levy for the payment of the debt, and in order that the courts shall not be impeded or frustrated, every one is required to know their acts and doings, and if he does not have actual knowledge, he is presumed to have constructive knowledge thereof, which is equivalent.

The defendant in this case can be regarded in no other light than as having information of the levy on the land, and of the lien created by the levy, and he is therefore charged with having purchased the land knowing it was liable to pay the debt of Seaman, Peck & Co., and he in fact is substituted, so far as the land is liable, to pay the debt to his vendor.

Since the plaintiff claims the land under both judgments it is unnecessary for us to decide the comparative superiority of

these judgments: if the sale made by virtue of either is valid in comparison with the title of defendant, it will be decisive of the points in controversy.

When Coleman & Co. recovered their judgment against Bradfield in the District Court, on the 23d of October, 1860, for $2169 $\frac{100}{100}$, and caused it to be registered in the office of the clerk of the County Court of Harrison county, on the 9th of November, 1860, they thereby gave information to every one that all the real estate of Bradfield, situate in the county of Harrison, was held liable to pay this judgment from and after the 9th of November, 1860, for four years. By these proceedings, Bradfield himself legally executed a mortgage upon all his real estate situate in Harrison county, subject to execution, and particularly the land in controversy, wherein and whereby he authorized Coleman & Co. to cause the land to be sold at sheriff's sale, at any time during the four years succeeding the 9th of November, 1860, for the payment of their debt, and this mortgage legally was shown to the defendant, DeLisle, at and before the time he purchased the land of Bradfield. DeLisle, the defendant, legally knew, on the 2d of February, 1864, that the land was held liable to pay the Coleman debt, and he also knew that since the 7th of December, 1861, Coleman & Co. had not been able to have execution on said judgment, and would not be able till statutes should be passed authorizing them so to do. He purchased the land with a full legal knowledge of the incumbrance on it, and received no better title than the grantor had to convey. And since the land, at the time of his purchase, was liable to be levied on and sold to pay the Coleman debt, as soon as by the statutes or laws it should be practicable, it was not divested of this liability by the sale. Whatever onerous conditions legally attached to the land and were legally known to the purchaser remained; and if, when the execution was levied in 1868, the land would be liable to pay the debt if the sale had not been made, it was still liable. Had the defendant purchased the land after the 8th of November, 1864, and previous to the levy in 1868, he might

have had some pretense that he was a purchaser without notice of the encumbrance on it, and a different question would have been presented. The only object in recording a judgment is to give notice to purchasers to beware. So far as the defendant is concerned, his property would be liable under any circumstances to pay a valid judgment, and, as before stated, the purchaser in this instance occupies no better status than his vendor. The following authorities amply sustain the positions assumed:

(Robertson v. Green, 6 Howard, Miss., 223, 228 ; Locke v. Coleman, 2 Monroe, Ky., 14; Vincent v. Perry, Harper,. S. C., 388 ; Henry & New v. Champion, 11 Humphrey, 569, 571; Holberson v. Harrall, 19 Ala., 753 ; De Vendall v. Hamlin, 27 Ala., 156; Mercein v. Burton, 17 Texas, 207; Green v. Allen, 2 Washington C. C., 281 ; Burger v. Loyd, 3 Salkeld,. 145 ; Dodge v. Casey, 1 Miles, 13 ; Sames v. Alexander, 3 Yates, 268.) This case is cited in 3 U. S. Dig., 378, § 492 ; Robinson v. Green, 6 Howard, Miss., 223 ; Locke v. Coleman, 2 Monroe, 12; Smith v. Early, 4 Howard, Miss., 178; Vincent v. Perry, Harper, S. C., 388 ; Turner v. Lawrence, 9 Ala., 426 ; Talbot v. Melton, 9 Smeeds & Marshall, 9 ; Bynum v. Budge, 4 Mass., 155 ; Langdon v. Potter, 3 Mass., 218; Caperton v. Morton, 5 Ala., 217 ; Barnes v. Billington, 1 Washington C. C., 29; Jackson v. ———, 4 McLean, 555 ; Green v. Cartwright, cited in Sumner v. Moore, 2 McLean, 66 ; Jackson v. Delaney, 13 Johnson, 550 ; Reynolds v. Croft, 3 Cains, 271.

Wherefore, inasmuch as the inception of each of the titles to the land to plaintiff is of a date anterior to that of defendant's, and a lien existed on the land for the payment of each of the judgments at the time that defendant DeLisle purchased, of which he had notice; and since it further appears that the creditors of Bradfield, in each of the judgments, were not guilty of any neglect or delay in collecting their debts, and that the liens created before the war were not destroyed, though suspended during the war, and were revived and in full force at the time of the respective levies after the war, and that,

by the sale of the land by the officers of the courts to the plaintiff, he required titles paramount to the title of defendant; it is, therefore, considered that the judgment of the District Court be reversed. And this court proceeding to give such judgment as the District Court ought to have given, it is ordered that the plaintiff have and recover of the defendants, L. C. DeLisle, and —. —. Witherspoon, the land set forth in the petition, viz: ———, and also the sum of ———, being the amount due for the rent and occupation thereof, and also all costs in this and the District Courts expended, and this decision be certified to the District Court for observance.

Reversed and rendered.