H. A. and M. E. Delespine *v.* George B. Campbell et al.

1. Lien—Judgment.—A judgment in favor of the holder of a promissory note which forecloses a mortgage lien executed to secure the same, cannot affect the security afforded by the mortgage to one not a party to the proceeding, and who holds another unpaid note, jointly secured by the same mortgage.

2. JUDGMENT LIEN.—When separate suits are brought by two parties on promissory notes, each secured by the same mortgage, and judgments of foreclosure are rendered in each without regard to the rights of the other party, each plaintiff is in equal error in disregarding the rights of the other, and neither judgment can exclusively appropriate the security.

3. JUDGMENT—MORTGAGE—LACHES.—The fact that a judgment creditor failed, during the period the stay law of November 10, 1866, was practically in force, to obtain an order of sale and execution, could not prejudice his lien secured by mortgage, nor authorize another party whose debt was equally secured by the same mortgage to appropriate the entire security.

4. MORTGAGE—NOTICE.—A mortgagee of property is charged with constructive notice of adverse liens indicated in the chain of title under which he claims; and when there is a prior-recorded mortgage on the same property, with judgment of foreclosure thereon in the District Court unsatisfied, he cannot be an innocent mortgagee.

5. PURCHASER FOR VALUE.—A purchaser at execution sale who pays the amount of his bid by crediting the judgment foreclosing a mortgage which is owned by his ward, is not a purchaser for value.

6. EQUITY—MARSHALING SECURITIES.—The mere fact that one of two promissory notes secured by a lien on land first matures, will not, of itself, entitle the assignee to priority, but to equality only, of payment from the proceeds of the security.

7. MORTGAGOR AND MORTGAGEE—PURCHASER WITH NOTICE.— One who holds a mortgage on land may, in the first instance, as between himself and the original mortgagor, or a subsequent purchaser with notice, obtain both a personal judgment against the mortgagor and a decree of foreclosure.

APPEAL from Anderson. Tried below before the Hon. Richard S. Walker.

On June 5, 1878, Delespine and wife filed their first original amended petition against George B. Campbell, A. L. Pearson, Susan R. R. Pearson, (his wife,) R. H. Wren, and John A. Matthews, alleging, in substance, that on January 31, 1861, R. H. Wren made and delivered to George B. Campbell two promissory notes for $1,347.32 each, payable to the order of George B. and Ben. Campbell, one due March 1, 1862, with ten per cent. interest from January 1, 1862, the other due March 1, 1863, with ten per cent. from January 1, 1863; that R. H. Wren, on February 1, 1861, made to the Campbells a

mortgage on three tracts of land, (which were described,) to secure the payment of the notes; that on May 9, 1862, the Campbells transferred the note of Wren, then just due, to plaintiff Delespine, and that he afterwards assigned the same to his wife, his co-plaintiff; that plaintiffs brought suit on that note August 14, 1865, against Wren, as maker, and George B. Campbell, as indorser, (Ben. Campbell being dead,) and obtained a judgment against them, on October 26, 1866, for $1,777.68, together with a foreclosure of the mortgage; that execution was not issued on that judgment by reason of the stay laws then recognized as in force; that George B. Campbell, on March 19, 1865, obtained a writ of error, gave bond, and, by error, appealed from that judgment to the Supreme Court, where, on May 15, 1869, the judgment was reversed and the cause as to George B. Campbell dismissed.

Delespine and wife further alleged that George B. Campbell retained the other note given by Wren, and sued on the same March 5, 1866, obtaining a judgment, with foreclosure of mortgage, October 24, 1866; that the suit of plaintiff in this action stood on the docket as No. 1,516, and the suit brought by Campbell stood as No. 1,631; that Delespine, on paying for the note transferred to him, in addition to the security afforded by the mortgage, had the personal assurance of Campbell that he would guarantee its payment; that Margaret Delespine received the transfer of the note on account of indebtedness to her from her husband, on account of her personal estate; that G. B. Campbell pleaded plaintiffs' delay in bringing suit against him, caused by the supposed legality of the stay laws, in bar of Campbell's liability as indorser, and on that ground obtained a judgment in the Supreme Court releasing him from liability; that while plaintiffs were awaiting the decree of the Supreme Court on the writ of error, and before their judgment had become dormant, George B. Campbell, on June 2, 1868, obtained an order of sale and execution on his judgment against Wren, and had the mortgaged lands sold at sheriff's sale on July 7, 1868; that Campbell, at that

sale, became the purchaser at the nominal sum of $250, which was paid by crediting the judgment, and Campbell received a deed; that Campbell, knowing of the existence of plaintiffs' judgment, fraudulently sold the lands he had purchased to his co-defendant, A. L. Pearson and wife, and had the deed made to Pearson's wife, who knew that plaintiffs' judgment had not been satisfied; that J. A. Matthews was in possession, claiming under a pretended title from Pearson, made since the institution of this suit, and that he bought with actual notice of plaintiffs' mortgage lien.

The plaintiffs further alleged that a certified transcript of their judgment foreclosing the mortgage lien was filed for record in the county clerk's office November 12, 1866, and that their mortgage was filed for record February 1, 1861; that plaintiffs' judgment was dormant when this suit was brought, but had not been paid, and that Wren was insolvent. They prayed that the judgment of October 26, 1866, with a foreclosure of their mortgage decreed in the same, might be revived; that the pretended title of Pearson and of Matthews be decreed null as against their mortgage lien, for a foreclosure of the mortgage, and priority of satisfaction of the debt, as against Campbell and other defendants.

At the December Term, 1878, Campbell filed a number of exceptions to plaintiffs' petition and general demurrer; pleaded the statute of limitations and the judgment of the Supreme Court of May 15, 1869, dismissing plaintiffs' suit as to him in bar of plaintiffs' actions, and a general denial. He set up specially his purchase of the lands for $250 under execution, and prayed that if the lands should be again sold, his *pro rata* interest resulting from his original lien be protected.

Wren answered, urging exceptions not necessary to mention in view of the opinion, and relied on the statute of limitations.

Matthews answered, setting up staleness of the demand and three and five years' statutes of limitations, and denied generally. He alleged that on March 1, 1869, Pearson and wife borrowed of John H. Benson, guardian of the estate of W. F.

Coleman, a minor, $935.13 belonging to the minor, and paid that money to George B. Campbell as purchase-money for the land; that to secure Benson as guardian, Pearson and wife, on March 1, 1869, executed two notes, each for $467.56, and also a mortgage on the lands mentioned in the petition; that the notes were not paid until defendant Matthews, as guardian of Coleman, brought suit thereon against Pearson and wife, and that on December 16, 1875, a judgment was rendered against Pearson and wife for the amount due on the notes and foreclosing the mortgage; that the lands were, under the judgment, sold in February, 1876, when defendant Matthews became the purchaser; that when Campbell sold to Pearson plaintiffs had lost their lien; that he had bought in good faith, and at a time when no suit was pending to revive the judgment as against Wren.

Plaintiff, by his second supplemental petition filed December 13, 1878, pleaded the coverture of Mrs. Delespine in avoidance of the statute of limitations, and in answer to a plea of ten years' limitation interposed by Campbell, they pleaded that the original judgment was rendered October 26, 1866, and their original petition in this suit was filed within ten years from March 30, 1870; that H. A. Delespine is only a party *pro forma;* they admitted the mortgage and sale thereunder to secure the loan made of the minor's money. Five amendments and exceptions were afterwards filed, but further notice of pleadings, covering nearly a hundred pages of the record, is omitted.

The court rendered judgment as follows, substantially, viz.: Reviving the dormant judgment of Delespine and wife against Campbell, reciting that the Supreme Court had decided that Campbell was not liable as indorser on said judgment, and that therefore the same was not revived as to him; that there was no fraud in Campbell's judgment against Wren; that Delespine and wife did not object to said judgment and sale until August 26, 1869, after the land had been sold to S. R. Pearson, as the community property of S. R. and A. L. Pearson, and the purchase-money paid in full, nor until after A. L. Pear-

son had mortgaged the land to Benson, guardian of Coleman, for money loaned; that Benson was a mortgagee without notice of any equities between Campbell and Delespine; that it did not appear that either Wren or Campbell was insolvent; closing by quieting Matthews in his title to the land, and declaring that the revival of the judgment of plaintiff against Wren shall in no way revive the mortgage lien therein foreclosed so as to affect the title of Matthews; that Matthews' title is decreed to be free from said lien, and that Delespine recover of Campbell $122.50, it being $\frac{1777}{3486}$ of the amount for which the lands sold under Campbell's decree of foreclosure, with eight per cent. interest, making $222.75.

The assignments of error are manifest from the opinion. The facts are also apparent from the opinion, or sufficiently indicated by it.

*Theodoric C. Jones,* for appellants, in support of first assignment of error, cited Briscoe *v.* Bronaugh, 1 Tex., 332; Williams *v.* Murphy, 36 Tex., 176; Allen *v.* Root, 39 Tex., 598; Jackson *v.* Butler, 47 Tex., 426; Peters *v.* Clements, 46 Tex., 123; Bank of Metropolis *v.* Guttschlick, 14 Pet., 19–32; Harris *v.* Vaughn, 2 Tenn. Ch., 486.

In support of the second assignment of error he cited Ayres *v.* Duprey, 27 Tex., 606; Orme *v.* Roberts, 33 Tex., 773.

In support of the third assignment he cited White *et al. v.* Downs, 40 Tex., 233; Watt *v.* White, 46 Tex., 343; Delespine *v.* Campbell, 45 Tex., 633; Paris Exchange Bank *v.* Beard, 49 Tex., 358.

*Greenwood & Gooch,* for appellee Matthews.

I. We urge the following counter-rules in equity as counter-propositions to that contained in appellants' first assignment of error, viz.: That a court of equity will not grant the relief prayed for unless it is shown in the complainant's bill, and in the evidence, that the complainant is without remedy at law.

There is nothing in the statement of facts to show that R. H. Wren was insolvent, or unable to pay the entire amount of the moneyed judgment of appellants against him, either at the date of the original judgment, October 26, 1866, or at date of revival of said judgment.   (Story's Eq., secs. 33, 49.)

II.   A creditor like J. H. Benson, who obtains a mortgage for money loaned on a tract of land without notice of the equities of other parties, defeats the equity, and a purchaser at a sale made under a decree of foreclosure of the mortgage will acquire a good title.   (Cavanaugh *v.* Peterson, 47 Tex., 207; Fisk *v.* Wilson, 15 Tex., 432; Martel *v.* Somers, 26 Tex., 561; Perkins *v.* Sterne, 23 Tex., 563; Story's Eq., secs. 409, 410; 2 Wash. on Real Prop., 122.)

III.   One who has notice, deriving title through one without notice, is protected against equities, whether they be liens, incumbrances, trusts, or other dormant equities.   (Ellis *v.* Singletary, 45 Tex., 41; Story's Eq., secs. 409, 410, 1503.)

IV.   A creditor who purchases at a sheriff's sale and has his bid credited on his judgment,—and certainly this would be so where the purchaser is a guardian, and accounts to his ward for the purchase-price as if it were actually paid to him,—is a purchaser for value.   (Ellis *v.* Singletary, 45 Tex., 40; Bayley *v.* Greenleaf, 7 Wheat., 46; 4 Kent's Comm., 154*, note *a*.)

BONNER, ASSOCIATE JUSTICE.—The first error assigned in this case is, that " the court erred in holding that J. H. Benson, guardian of the estate of the minor, W. F. Coleman, under whom the defendant Matthews claims title to the land described in the plaintiffs' pleadings, and in the judgment herein, was an innocent mortgagee of said land without notice of any of the equities existing between the defendant Campbell and the plaintiffs, H. A. and M. E. Delespine."

It was held in this case on former appeal, and in other cases, that if the owner of one of two promissory notes, secured by a lien upon land, sues to enforce or foreclose the same, without making the owner of the other note a party, the judgment will

not affect the rights of the latter.    (Delespine v. Campbell, 45 Tex., 632; Robertson v. Guerin, 50 Tex., 323.)

Both the plaintiffs in this action and George B. Campbell having prosecuted their original suits separately against Wren, and obtained foreclosure of the mortgage upon each of the notes held by them, without regard to their respective equities, were in equal fault, and neither affected by the judgment of the other.

The testimony shows that this mortgage to secure both the notes was duly recorded on the day of its execution; that the judgment in favor of Campbell was rendered October 24, 1866, and that in favor of Delespine and wife, though their suit was brought first, was rendered two days afterwards; that this last judgment was, on writ of error, taken to the Supreme Court and reversed as to the indorser, George B. Campbell, May 15, 1869; that in the meanwhile, and during the pendency of this writ of error, on July 7, 1868, Campbell caused the mortgaged land to be sold under his judgment, at which sale he became the purchaser at $250; that on January 27, 1869, he sold the land to Susan R. Pearson, who, joined by her husband, A. L. Pearson, mortgaged the same on March 1, 1869, to John H. Benson, as guardian of W. F. Coleman, the writ of error still pending in the Supreme Court.

The stay law of November 10, 1866, was not declared unconstitutional until February, 1868, but a few days before this writ of error was perfected.    (Jones v. McMahan, 30 Tex., 719.)

The failure of Delespine and wife to obtain an order of sale and execution during the time this law was practically in force, should not prejudice their lien.    (Hargrove v. DeLisle, 32 Tex., 177; Cravens v. Wilson, 48 Tex., 324.)

Under the facts of this case, we are of opinion that, at the date of Benson's mortgage, he had constructive notice of the lien of Delespine and wife, by the recitals in the chain of title under which he claimed, by the record of the mortgage from Wren, and by their judgment of foreclosure in the District

Court; and that the first error assigned, that the court below held that Benson was an innocent mortgagee without notice, was well taken. (Blankenship *v.* Douglas, 26 Tex., 225; Robertson *v.* Guerin, 50 Tex., 317.)

2. The second error assigned is to the effect that the court erred in holding that Matthews was a purchaser for value under the judgment foreclosing this mortgage to Benson, the former guardian, as no new consideration was paid, but simply the amount of his bid credited upon the judgment in favor of his ward.

If the court thus held, as might be inferred from one of the recitals in the judgment, it was error. (Ayres *v.* Duprey, 27 Tex., 593; Orme *v.* Roberts, 33 Tex., 768.)

We do not think, however, that this alleged error is fairly sustained by the record, but that the judgment upon this issue was based upon the previous erroneous finding that Benson was a *bona-fide* purchaser for value without notice, and that this would protect a subsequent purchaser under him. (Basset *v.* Nosworthy, 2 Lead. Cas. in Eq., part I, 50, and numerous authorities; 1 Story's Eq. Jur., secs. 409, 410, and note.)

3. The third assigned error is, that "the court erred in not rendering judgment against defendant Campbell for $250, amount of proceeds of the sale of said land under his judgment against Wren, referred to in the pleadings."

The only equity claimed by Delespine and wife, as sustained by the record, to entitle them to have their note first satisfied by the proceeds of the mortgaged property, was that the same first became due.

Under the decisions of this court, the mere fact that one of two promissory notes secured by a lien on land and assigned by the payee would first mature, would not, of itself, entitle the assignee to priority, but to equality only, of payment from the proceeds of the security. (Paris Exchange Bank *v.* Beard, 49 Tex., 363; Robertson *v.* Guerin, 50 Tex., 317.)

4. The question urged by counsel for appellee, that as Wren was not shown to be insolvent, appellants have their legal rem-

edy against him, and cannot resort to a foreclosure of the mortgage, does not, we think, apply to a case like the present.

It has long been the established practice under our blended system of law and equity, that where the plaintiff has a mortgage upon land, he may, in the first instance, as between him and the original mortgagor, or a subsequent purchaser with notice, obtain both a personal judgment against the mortgagor and a decree of foreclosure; and this is the practice indicated by our statute. (Paschal's Dig., art. 1480; Rev. Stats., art. 1340.)

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 17, 1879.]