### WILLIAM CRAVENS v. M. J. WILSON ET AL.

1. JUDGMENT LIEN.—A judgment rendered in 1865 did not lose its lien on land, when execution was issued within a year after decision of the Supreme Court declaring the Stay law of 1866 unconstitutional. Notwithstanding that law was unconstitutional, its practical effect was to excuse a failure to have executions issued on judgments rendered in 1865 and 1866, within a year after their rendition.

2. LEVY — EXECUTION. — Though the levy of an execution on personal property is, as a general rule, *prima-facie* evidence of satisfaction of the execution, this presumption does not arise when possession of the property remains with the defendant in execution.

3. ATTACHMENT LEVY.—The levy of an attachment is no satisfaction of plaintiff's demand, as the levy of an execution would be, under the circumstances above indicated.

4. SHERIFF'S SALE—INTERVENOR. — When the sheriff is guilty of such irregularities, in selling land under execution, as to prevent a fair sale of it, the judgment creditor may either proceed by motion, in the court from which the execution emanated, to set aside the sale, giving notice to the purchaser, or he may intervene in a suit between the purchaser and a third party which involves the title.

5. CREDITOR—EXECUTION SALE.—A creditor interested in a junior execution has the right to maintain a suit to set aside a sheriff's

sale, made under an execution which was a prior lien, when, in consequence of the fraud, irregularity, or willful disregard of law by the sheriff, the property sold brought less than it would have brought at a fair sale, whereby his rights have been impaired.

6. JUDGMENT—PLEADING.—An intervenor claiming land improperly sold under an execution against him, who in his prayer asked that the sheriff's "deed to the defendant may be set aside, and for general relief," is entitled, upon a verdict finding the illegality of the sheriff's sale, to a recovery of the land, to a writ of possession, and to judgment for rents and profits, if there be any.

7. CHARGE OF COURT.—A charge of court hypothetical in its character, not warranted by the evidence, which may have misled the jury, will be cause for a reversal. See this case for such a charge.

8. CASES APPROVED.—Phillips *v.* Lesser, 32 Tex., 741; Sessums *v.* Botts, 34 Tex., 335; Cravens *v.* Wilson, 35 Tex., 52; Garner *v.* Cutler, 28 Tex., 176; Owen *v.* City of Navasota, 44 Tex., 518; Calhoun *v.* Wright, 23 Tex., 522; Allen *v.* Stephanes, 18 Tex., 658; Hardy *v.* De Leon, 5 Tex., 211; Trammell *v.* Watson, 25 Tex. Supp., 210.

ERROR from Shelby. Tried below before the Hon. George Lane.

(Chief Justice ROBERTS and Associate Justice MOORE being disqualified, Tignal W. Jones and John C. Robertson were appointed special judges.)

This cause was before this court at a former term. (See 35 Tex., 52.)

M. J. Wilson, on the 31st day of October, 1870, brought an action of trespass to try title to a tract of land of about 900 acres, situated in Shelby county, Texas, a part of the Domingo Gonzales headright, against William Cravens. The case presented by M. J. Wilson's pleadings, is, substantially, that Cravens claimed the land under a deed from the sheriff of Shelby county, and that M. J. Wilson also claimed the land under a deed from the sheriff of said county; that both of them recovered judgments, in the District Court of Shelby county, against Benjamin Wilson, and had executions issued and levied on the land in controversy, but that the land was advertised and sold under Cravens' execution, and that Cravens bought the land at the sale; that Cravens bought the land at a grossly inadequate price, and that he was enabled to do so

by the fraudulent conduct of Cravens and of the sheriff, who had conspired together to prevent the land from selling for as much as it was worth, and to enable Cravens to get it at a reduced price; that the acts indicating their fraudulent conspiracy were: that the sheriff, some ten days before the time appointed for the sale, caused the notices of the sale to be torn down, and informed the agent of M. J. Wilson that the land would not be sold; that on the day of sale he announced publicly, in the presence of Cravens, that the land would not be sold; that late in the day, after M. J. Wilson's agent, and others who had attended the place of sale for the purpose of bidding for the land, had gone home, he offered the land for sale, and that it was bought by Cravens.

The prayer of the petition was, that the sheriff's deed to Cravens be annulled and set aside, and that M. J. Wilson have judgment for the recovery of the land, with the writ of possession, and for the rents and profits, and for general relief.

William Cravens, in answer to the petition of M. J. Wilson, filed a general demurrer and the general denial; and by a special plea in response to M. J. Wilson's pleadings, and to a plea of intervention filed by Benjamin Wilson on the 12th of March, 1875, alleged that M. J. Wilson's judgment was founded on a spurious demand, by the connivance of William Wilson, and denied the truth of the statements in the plea of intervention.

The case made by the plea of intervention of Benjamin Wilson, was, substantially, that, as against Cravens, the intervenor was entitled to the land; that Cravens, in his suit against him, had caused an ancillary attachment to be issued and levied on 60,000 pounds of cotton in the seed that belonged to the intervenor, and had the same sold, and that the proceeds, if properly and honestly applied by the sheriff to Cravens' debt, would have been sufficient to satisfy it; but that Cravens and the sheriff, conspiring together to cheat and defraud the intervenor, misrepresented the amount that the cotton brought at the sale, and pretending that it did not sell for

enough to satisfy Cravens' debt, caused the execution to be issued and levied on the land in controversy, which was the property of the intervenor, and caused the same to be sold and bought in by Cravens, when they both knew that the proceeds of the sale of the cotton were amply sufficient to satisfy Cravens' debt; that Cravens was enabled to purchase the land at the sheriff's sale at the grossly inadequate price of $300,—when it was worth, at the time, $5,000,—by the fraudulent conduct of Cravens and the sheriff, in causing the notices of the sale of the land to be torn down previous to the sale, and by the announcement of the sheriff on the day of sale, with the connivance of Cravens, publicly and in his presence, that the land would not be sold, and by the sheriff offering it for sale late in the day, when the intervenor's agent, and others who had gone to the place of sale for the purpose of bidding for the land, had gone home, and thereby enabling Cravens to buy it for greatly less than its value.

The prayer of the plea of intervention was, that the sheriff's deed to Cravens be set aside, and for general relief.

The facts, or so much of them as are material, under the issues in the case, were substantially as follows: It was agreed by the parties to the suit, that there was a regular chain of title from the government down to Benjamin Wilson, the intervenor. On the 14th day of March, 1868, M. J. Wilson obtained judgment, in the District Court of Shelby county, Texas, against Benjamin Wilson, for the sum of $1,731.07, debt and damages, and for the costs of the suit. Execution was issued on this judgment on the 2d day of April, 1868, and levied by the sheriff of Shelby county on the 29th of August, 1868, among other things, on about 900 acres of land in Shelby county, the Domingo Gonzales headright, as the property of Benjamin Wilson, subject to an execution in favor of William Cravens. An alias execution was issued on M. J. Wilson's judgment on the 20th of April, 1870, levied on the Domingo Gonzales headright of 900 acres, and

the land sold pursuant to notice on the 7th of June, 1870, by the sheriff. At that sale, M. J. Wilson bid off the land at $260, and took a deed from the sheriff therefor, bearing date the 7th of June, 1870, which was duly acknowledged and recorded.

William Cravens obtained judgment, in the District Court of Shelby county, against Benjamin Wilson, on the 1st of October, 1866, for the sum of $2,886.58, debt and damages, and for the costs of suit, and foreclosing a lien by attachment, which he had caused to be levied on 60,000 pounds of cotton in the seed, as estimated by the sheriff, as the property of Benjamin Wilson. Execution was issued on this judgment on the 23d day of March, 1868, and levied by the sheriff of Shelby county on the Domingo Gonzales headright of 900 acres, and on several other tracts of land, and on 28,000 pounds of seed cotton, as the property of Benjamin Wilson. The execution was levied on the cotton on the 1st of April, 1868, subject to an execution previously levied thereon in favor of one E. H. Hearn, and on the land on the 15th of April, 1868. The cotton was sold on the 14th of April, 1868, and $173.96 of the proceeds applied to the Hearn execution, and the balance ($719.64) credited on the execution of Cravens. On the 2d day of June, 1868, the 900 acres of the Domingo Gonzales headright were sold, and bid off by Cravens at $360, and a deed therefor duly executed to him by the sheriff on the day of sale, which was duly acknowledged and recorded.

The attachment mentioned as having been levied on the 60,000 pounds of seed cotton was ancillary to the suit of William Cravens against Benjamin Wilson, and was issued on the 29th of March, 1866, and levied on the cotton in a house on Wilson's premises, near his dwelling-house, on the 30th of March, 1866. The sheriff, when he levied the attachment on the cotton, nailed up the door of the house in which he found it, and left the cotton in the care of Benjamin Wilson, the defendant in the attachment, not being able to

procure wagons to haul it away; and forbade any one from interfering with the cotton. He never had anything to do with it himself, nor gave any one else permission to interfere with it in any way. When the cotton was sold, under Cravens' execution, the sheriff found that the door of the cotton-house had been broken open, and a large portion of the cotton removed.

It was in evidence, that 1,500 pounds of cotton will make a bale of lint cotton, weighing 450 pounds; that cotton was worth, in Shelby county, in 1866, from eighteen to twenty cents per pound, and that it sold, between 1866 and 1868, in Shelby county, as high as fifty cents per pound.

One Dr. Joseph H. Trent, as the agent of M. J. Wilson and Benjamin Wilson, went to the sheriff of Shelby county, to see him in reference to the sale of the Domingo Gonzales tract of 900 acres of land, (which had been advertised to be sold on the 2d day of June, 1866,) some ten days previous to the sale, and was informed by the sheriff, as he says, that this tract of land would not be sold, and was requested by the sheriff to tear down the notices of the sale. This witness states that he tore down the notice of the sale posted at Hamilton, in Shelby county, and that on the 2d of June, 1866, the time appointed for the sale, he went to Center; heard the sheriff announce that the sales were closed for that day; that the sheriff told him the hour for judicial sales had passed; that he saw Cravens at Center on that day, but had no conversation with him, and did not hear him say anything about the sale; that he did not go to Center on that day prepared to purchase the land, as he did not expect it would be sold, from what the sheriff had previously said to him on the subject; that the land was not sold while he was in Center, and that he did not leave for his home until after two o'clock in the evening; that he is the nephew of Benjamin Wilson, and the cousin of M. J. Wilson.

One G. P. Rains states that he tore down the notice of the sale of the Domingo Gonzales land, which was on his store-

door in Hamilton, in Shelby county, having been informed by Dr. Trent that the sheriff had requested him to tell him that he wished it done, and that there would be no sale; that this was on Sunday previous to the sale; that it prevented him from attending the sale; that he had intended to go to the sale, and make the land bring a thousand dollars; that he thinks the land was worth fifteen hundred dollars, but does not say it would bring that under the hammer; that the people in his neighborhood were prevented from attending the sale by the tearing down of the notice on his store-door, and the information that there would be no sale.

John Sanders states that he went to Center on the day of sale with four hundred dollars in gold, to buy the Domingo Gonzales land; that he wanted it for a home; that the place was in a bad condition, the fences being down, but was worth eight or nine hundred dollars; that the land was sold late in the evening, but that he cannot tell whether it was before or after four o'clock; that he bid some for the land, and would have bought it, but was told that if he bought the land he would buy a lawsuit.

One Henry McCauly states that he was at Center on the day of sale, and heard the sheriff tell John Sanders that the Domingo Gonzales land would not be sold on that day, and that he thinks that Cravens was standing close by the sheriff at the time, and must have heard him; that he was well acquainted with the land, and thinks it was worth at that time two dollars per acre, and with a good fence around it, would have been worth three or four dollars per acre.

William Cravens, as a witness, states that he did not know that the sheriff had caused the notice of the sale at Hamilton to be torn down, and that the sale took place on the first Tuesday in June, 1868, before four o'clock. This is all that Cravens states.

One F. L. Johnson states that he was at the sale, and thinks the land was sold before four o'clock. For the verdict and judgment, reference is made to the opinion.

*Reeves & Dodd*, for plaintiff in error.—The intervenor does not ask for damages for rents, nor does he, in his petition, intimate any such claim; neither does he pray for any such relief. A complainant must recover, if at all, upon the case made in his pleadings, is a rule so well established, that we need only refer to decisions of this court. (See Hall *v.* Jackson, 3 Tex., 305; Thompson *v.* Thompson, 12 Tex., 329, 330; Parker *v.* Beavers, 19 Tex., 410; 6 Ga., 589. Special attention is called to the cases of McKey *v.* Welch, 22 Tex., 390 to 396, inclusive; 4 How., 131; 2 Wheat., 221.) In this case, the verdict of the jury gives the intervenor rent when he did not ask for it, had not stated the value of its use and occupation, or otherwise laid any foundation for its recovery, or given any notice by his pleadings that he claimed it. (See Holman *v.* Criswell, 13 Tex., 42; H. T. & B. R. W. Co. *v.* Milburn, 34 Tex., 224.)

We submit, that the title of Cravens, the purchaser at sheriff's sale, was valid and good, if either the execution in his own favor, or the one in favor of M. J. Wilson, was valid. As the intervenor does not allege or offer any proof attacking the validity of the execution in favor of M. J. Wilson, the title to Cravens, by reason of his purchase at said sale, is valid and good. (See Towns *v.* Harris, 13 Tex., 513.)

The deed of the sheriff to William Cravens, however, recites but one execution, which fact, it is submitted, cannot prejudice the rights of defendant Cravens. "The bid and payment of the purchase-money at an execution sale constitute the purchaser's right, and the deed merely evidences that right." (Miller *v.* Alexander, 8 Tex., 43.)

It is insisted, that that part of the charge of the court, viz., "That if you find that the amount credited by the sheriff, and the portion of cotton obtained and sold by Cravens, was of sufficient value to pay the judgment, interest, and cost, and if you find that the land was afterwards levied on, such sale was without authority, and you will find for the intervenor," is hypothetical, and outside of the evidence in the case. (See

Austin v. Talk, 20 Tex., 167; Andrews v. Smithwick, Id., 118.)

A charge upon a hypothesis which has no foundation in the evidence, is error for which the judgment will be reversed, unless it appears that the jury were not thereby misled. (Earle v. Thomas, 14 Tex., 583; McGreal v. Wilson, 9 Tex., 429; Hampton v. Dean, 4 Tex., 455; Yarborough v. Tate, 14 Tex., 483; Steagall v. McKellar, 20 Tex., 268.)

The court directs the jury, in positive terms, that if the attachment was levied upon a sufficient amount of cotton to have satisfied the debt of Cravens, then the same was in law considered satisfied and paid. Such a question of law does not arise when the property is left in possession of the defendant. (See United States v. Dashiel, 3 Wall., 697; 28 Tex., 202.)

A. M. Carter, for defendant in error, cited Howard v. North, 5 Tex., 290; Allen v. Stephanes, 18 Tex., 658; Ayres v. Duprey, 27 Tex., 593–608, in support of the position of fraud by appellant, Cravens. The price paid will aid the jury, with other evidence, in arriving at a correct conclusion as to whether there was fraud in the purchase or not. (Osgood v. Franklin, 2 Johns. Ch., 1; Chamblee v. Tarbox, 27 Tex., 145; 1 Story's Eq., sec. 246; Burch v. Smith, 15 Tex., 224.) Fraud can be proved by circumstantial evidence, but the circumstances must be strong and pregnant, from which no other reasonable hypothesis can be drawn. (Paxton v. Boyce, 1 Tex., 324, 325.) Allen v. Stephanes, 18 Tex., 658, and Chamblee v. Tarbox, 27 Tex., 147, are relied on especially, in support of the fraudulent conduct of the sheriff and appellant, as proved on the trial of this cause. Also, Coleman v. Bank of Hamburg, 2 Strobh. Equity, 285; Gist v. Frazier, 2 Litt., 121; Coles v. Trecothick, 9 Ves., 234; Johnston v. Shaw, 33 Tex., 590. The law will not tolerate combinations to prevent fair competition at sheriff's sales, in fraud of the rights of the debtor and remaining creditors. (Jones v. Car-

well, 3 Johns. Cas., 29; Doolin *v.* Ward, 6 Johns., 194; Wilbur *v.* How, 8 Johns., 444; 1 Story's Eq., secs. 290, 293; Piatt *v.* Oliver, 1 McLean, 295.)

*J. G. Hazelwood,* for intervenor, Ben. Wilson.—An intervenor may join the plaintiff in asking the relief claimed by him, or any relief appropriate to the suit; or he may join the defendant in resisting the plaintiff's claim; or he may oppose the relief claimed by both parties. (Sayles' Prac., 2d ed., sec. 189; Garrett *v.* Gaines, 6 Tex., 435; 7 La. R. R. N. S., 196; Pierre *v.* Masse, 7 Mar. N. S., 196; Mussina *v.* Goldthwaite, 34 Tex., 125.)

On the question of Cravens' participancy in the fraud, and the character of title thereby acquired, the doctrine enunciated in Sydnor *v.* Roberts, 13 Tex., 614, as to void and voidable sales, is discussed. Voidable means that there is a party who may avoid a sale, and the injured party is the one to complain. (13 Tex., 620.) A stranger, buying under a voidable execution, would be protected; but such is not the case with the execution creditor who purchases at his own execution sale, and credits the execution by his bid. He is not a *bona-fide* purchaser, because he did not advance the consideration; (Ayres *v.* Duprey, 27 Tex., 606;) and on the subject of combinations to stifle competition, see James *v.* Fulcrod, 5 Tex., 512.

Where the pleadings and evidence support the verdict and judgment, it will not be reversed merely because the basis upon which the jury estimated damages may not correspond with the issue, or because the judge has submitted to the jury an improper test of liability. (25 Tex., 637; Sayles' Prac., 659.)

And in any case where the judgment must be the same upon a new trial, although the evidence does not support the verdict, the judgment will not be reversed. (Shannon *v.* Taylor, 16 Tex., 413.)

If the pleadings on both sides show that the intervenor is

entitled to his judgment, the judgment will not be disturbed. (Hill v. George, 5 Tex., 87.)

The court will not reverse the judgment on the ground of error in refusing a new trial, unless the verdict be wholly without evidence to support it. (Meuley v. Meuley, 9 Tex., 60; Davidson v. Edgar, 5 Tex., 492; Briscoe v. Bronaugh, 1 Tex., 340; Long v. Steiger, 8 Tex., 460; Powell v. Haley, 28 Tex., 53; Swinney v. Booth, 28 Tex., 113.)

The question of fraud was fairly submitted to the jury as a fact for their determination. "Gross inadequacy of price naturally leads to the presumption of fraud; and although inadequacy of price would not, under the English law, be sufficient to avoid the sale, yet it would raise a strong presumption against it. Inadequacy of price of half the thing sold would, under the civil law, avoid the sale." A question of fraudulent intent "is one of fact, to be submitted to a jury; and they are the judges of the weight and amount of evidence necessary to establish it. It is not enough that it is not clear that the verdict is right. It must clearly appear that it is wrong, to induce the court to set it aside." (Briscoe v. Bronaugh, 1 Tex., 326.)

In the case of Allen v. Stephanes, 18 Tex., 658, decided by Hemphill, C. J., a case almost in point with this, except the proof of fraud was not half so strong, we find the sheriff's deed set aside in that case, and the action of the court below sustained by the chief justice. It was announced, in Cravens' hearing and presence, that there would be no sale that day, and he was silent. "If a man interested is present, and hears any false or imperfect representation made, and does not set it right, he is fixed by the representations." (Kerr on Fraud and Mistake, 10.) Besides the moving and passing around of Weaver and Cravens, the tearing down of the advertisements by Weaver's direction, and the declarations of Weaver, publicly made, that there would be no sale that day, and that the hour for judicial sales had passed, thus lulling the departure of Dr. Trent, and the sale of the land at a late

hour by Weaver, and the small sum of $360 bid by Cravens for 900 acres of land then worth $500 a year rent, demonstrate to the mind some gross imposition; and on this point we submit that the case of Burch v. Smith, 15 Tex., 219, is decisive.

Where the question is one of fraudulent intent, it is the peculiar province of the jury to judge of the weight and sufficiency of the evidence; (1 Tex., 326;) and when the verdict of the jury is authorized by the facts, and the justice of the case has been obtained, the judgment will not be reversed on account of an erroneous charge. (Sayles' Prac., 2d ed., sec. 603.)

All the proof, on both sides, was heard in the court below without objection, and appellant will not be heard for the first time to complain in this court. (Sayles' Prac., 603.)

The presumption is, that the jury was sworn. "Thereupon came a jury of good and lawful men, W. B. Metcalf and eleven others." (Clark v. Davis, 7 Tex., 556; Sayles' Prac., 105.)

"The object of the law, in allowing set-offs, is to avoid a multiplicity of actions. Where, therefore, the respective demands of the parties are of such a nature as to admit of their being all settled in one action, the law intends that this shall be done." (Thomas v. Hill, 3 Tex., 270.)

"The plea of reconvention is derived from the civil law. By that law, to entitle a party to reconvene, it is not requisite that his claim be liquidated, provided it be incidental to, and necessarily connected with, the main action." "Nor is it perceived that our statute introduces any new rule in this respect. It was enacted to regulate, not to give, the remedy." The only requisition of the statute, is "that the claim be similar in its nature to that of the plaintiff in an action of trespass to try title, and for damages. The defendant may, by plea in reconvention, claim that the land be decreed to him; that the title of the plaintiff be annulled, and that he have judgment for the mesne profits; and the defendant will not

be restrained to mere defensive matter. (Egery *v.* Power, 5 Tex., 501.)

It has been repeatedly announced by this court, that it does not matter by what name a plea is denominated, but that the very right to be attained would be adhered to, and if the pleader should show a cause of action, or ground of defense, our courts will adjudicate his rights.

If the courts once acquire jurisdiction of the subject-matter, and the parties, they will adjudicate all the rights of the parties, and none of the litigants will be driven to a second action to obtain their rights. The rule of multifariousness does not obtain in our law. The courts of this State are competent to afford relief in every case in which it could, by possibility, be extended, by either courts of law or equity. (Dobbin, Adm'r, *v.* Bryan, 5 Tex., 276; Clegg *v.* Varnell, 18 Tex., 294.)

In Johnston *v.* Shaw, 33 Tex., 585, a league of land was bought at sheriff's sale for $40, and immediately conveyed by the purchaser to a third party. The sheriff's deed to the purchaser, and that to the third party, were set aside.

In all cases where the disproportion is enormous, slight additional circumstances will justify the inference that the sale is fraudulent. (Allen *v.* Stephanes, 18 Tex., 658; Coleman *v.* Bank of Hamburg, 2 Strobh. Eq., 285; Gist *v.* Frazier, 2 Litt., 121; 1 Story's Eq., sec. 246.

Circumstantial evidence is all that can be expected in cases of fraud. (Jernigan *v.* Wainer, 12 Tex., 189, 193.)

" The equitable powers of this court can never be exercised in behalf of one who has acted fraudulently." "A *feme-covert*, acting fraudulently, on her own responsibility, will be denied relief." (Hartwell *v.* Jackson, 7 Tex., 582.) " When a party intentionally misrepresents a material fact, or produces a false impression by words or acts, in order to mislead or to obtain an undue advantage, it is a case of manifest fraud." (1 Story's Eq., sec. 192; Mitchell *v.* Zimmerman, 4 Tex., 79.)

TIGNAL W. JONES, SPECIAL JUSTICE.—The verdict and judgment·in the court below, in this case, are in favor of William Cravens, the defendant, against M. J. Wilson, the plaintiff, and in favor of Benjamin Wilson, the intervenor, against William Cravens, the defendant, for the land in controversy, and the rents and profits thereof.

William Cravens made a motion for a new trial, as against the intervenor, and the motion having been overruled by the court, has brought the case to this court by writ of error, making M. J. Wilson one of the defendants in error.

M. J. Wilson seems to have acquiesced in the judgment in favor of Cravens against him; and but for the fact that he has assigned errors, and has appeared by counsel in this court, and filed his briefs, he might have been supposed to have passed entirely out of the case. We shall notice but one of the errors assigned by him.

It is unnecessary to notice this, as the question presented by it is not an open question in this court. But it has been very zealously, and we may add ably, pressed, in argument by counsel in their briefs, and therefore we think it but right to consider it, so that it may not embarrass the case on a future trial in the court below, should there be another trial.

The assignment to which we refer, is, substantially, that there is error in the portion of the charge of the court in which the jury is instructed that the lien of William Cravens' judgment, rendered on 1st of January, 1867, on the Domingo Gonzales·tract of land, in Shelby county, Texas, was not lost by reason of the failure of the plaintiff in that judgment to have execution issued within twelve months from the rendition of judgment.

The record shows, that execution was not issued on Cravens' judgment until the 23d day of March, 1868, more than a year after the rendition of the judgment.

From the time this judgment was rendered, until the 24th of February, 1868, the Stay law of 1866 was in force; so that execution could not have been issued but a few days before

it was issued, without disregarding the Stay law. On the 24th of February, 1868, this court decided the Stay law of 1866 to be unconstitutional. (Jones *v.* McMahan, 30 Tex., 719; Luter *v.* Hunter, 30 Tex., 688.)

These decisions doubtless gave rise to the belief, that the judgment of Cravens had lost its lien on the land in controversy, by reason of the failure of Cravens to have execution issued within twelve months from its rendition.

But this court has, as we think, settled the question, that a judgment rendered in 1865 or 1866 did not lose its lien on land, when execution was issued within the year from the decision of this court declaring the Stay law of 1866 unconstitutional. In Phillips *v.* Lesser, 32 Tex., 741; Sessums *v.* Botts, 34 Tex., 335; and Cravens *v.* Wilson, 35 Tex., 52, this court has decided, that notwithstanding the Stay law of 1866 was unconstitutional, the practical effect of that law was to excuse the failure to have executions issued on judgments rendered during the years 1865 and 1866 within the year from their rendition; and that the liens of all such judgments have been preserved, where executions were first issued upon them within the year from the 24th of February, 1868, the date when the Stay law of 1866 was decided by this court to be unconstitutional. And in Black *v.* Epperson, 40 Tex., 185, these decisions are referred to with approbation by this court. As has been seen, Cravens' execution was issued on the 23d day of March, 1868, less than a month after the Stay law of 1866 was declared to be unconstitutional. So that there can be no question, that the judgment of Cravens had not lost its lien on the land in dispute at the time his execution was levied on it; and being prior in date to the judgment of M. J. Wilson, it was a prior lien on the land.

The plaintiff in error has assigned quite a number of errors. We shall, however, notice only three of them. They are: 1st. As to the portion of the charge of the court in reference to the levy of the attachment on a sufficient quantity of cotton in the seed belonging to Benjamin Wilson, the defendant in

the attachment, to satisfy the debt of William Cravens, being a satisfaction or extinguishment of the debt, unless the evidence showed that the cotton had been left by the sheriff on the premises in custody of the defendant in the attachment, &c. 2d. As to the portion of the charge instructing the jury in regard to the character of their verdict, in case they should find for the intervenor against the defendant. 3d. As to the verdict of the jury, and the judgment of the court thereon, as between the intervenor and defendant.

The first of these three assignments of error is well taken.

If the writ levied by the sheriff on the 60,000 pounds of seed cotton had been an execution, instead of an attachment, the portion of the charge assigned as erroneous would have been correct.

In the case of Garner v. Cutler, 28 Tex., 176, it is decided, by this court, that a levy of an execution on personal property is, as a general rule, *prima-facie* evidence of satisfaction of the execution, but that this presumption does not arise when possession of the property remains with the defendant in execution. (See, also, Cornelius v. Burford, 28 Tex., 202, in which the same principle is asserted.)

But this principle does not apply to the levy of an attachment on personal property. The writ of attachment merely creates a lien on the property attached, that may be lost by a dissolution of the attachment. (Drake on Attachments, sec. 224.) So if the attachment is not foreclosed by the judgment in the case, the lien created by it is lost. (Id., sec. 228.) Again, the author lays down the law in regard to levies on personal property by writs of attachment in express terms to be different from that which applies to levies of executions on the same species of property. He says the levy of an attachment is no satisfaction of the plaintiff's demand, as that of an execution is under same circumstances. (Id., sec. 222.)

It is manifest, therefore, that this portion of the charge is erroneous.

The second of the three assignments in regard to the por-
tion of the charge in which the court directs the jury as to
the character of their verdict, in case they find for the inter-
venor, Benjamin Wilson, against the defendant, Cravens, is
likewise well taken.

If the sheriff was guilty of irregularities in the sale of the
land under Cravens' execution, whereby the land did not sell
for as much as it was worth, the intervenor, Benjamin Wil-
son, who was defendant in the execution, being interested in
his land selling at its highest market value, had the right to
have the sale set aside. (Owen *v.* City of Navasota, 44 Tex.,
518; Rorer on Judicial Sales, secs. 862, 863.) He could
proceed by motion in the court from which the execution
emanated, giving notice to the purchaser, by a distinct suit
for that purpose, or by plea of intervention, as in this case.
(See authorities above quoted.)

The evidence in this case clearly shows that the officer
selling the land under Cravens' execution was guilty of very
great irregularity or misconduct in having the notices of the
sale previous to the day of sale torn down, and in announc-
ing publicly at Center, where the property was sold, and pri-
vately to several persons on the day of sale, that the land
would not be sold.

So the intervenor could proceed to have the sale set aside
for fraud, if the facts in the case warrant the belief that the
sale was fraudulent. (Rorer on Judicial Sales, sec. 862. See,
also, Wright *v.* Calhoun, 19 Tex., 412; Calhoun *v.* Wright,
23 Tex., 522; Allen *v.* Stephanes, 18 Tex., 658.)

The plaintiff in the court below, M. J. Wilson, under the
allegations in his pleadings in this case, might also have the
sale set aside for irregularity, fraud, or a willful disregard of
the laws as to the manner of selling, he being interested *bona
fide* in the subject-matter of the sale, in consequence of his
having a junior execution levied on the same land at the
time of the sale under Cravens' execution, and, being inter-
ested in the land selling for its highest market value, in order

that any surplus left, after satisfying the balance due on Cravens' execution, might be applied to his execution, if the evidence in the case shows that these causes for setting aside the sale, or any of them, exist. (Rorer on Judicial Sales, sec. 864, and the cases referred to in note 2, under that section.)

The facts in the case show that the land was sold under Cravens' execution at $260, to Cravens, and that it was worth at the time from one thousand to fifteen hundred dollars. They also show that the sheriff had the notices of the sale torn down previous to the sale day, and that he, on the day of sale, announced publicly that the land in dispute would not be sold on that day, and that he told several persons on the ground the same thing. They also show that on the day of sale he and Cravens came out of the court-house together, and that the sheriff informed a man whom they met, while Cravens was standing near him, that the land in dispute would not be sold on that day.

According to the testimony, we think the land was sold to Cravens at a grossly inadequate price, and that the other facts and circumstances tend to show that the sale was fraudulent. But the question of fraud in the sale, *vel non*, is one of fact, to be determined by the jury that tried the case, and need not now be further discussed in this opinion, as it is manifest, from the verdict of the jury, that they did not find for the intervenor against Cravens on the ground that the sale was fraudulent.

There might be some question as to the diligence used by either M. J. Wilson or the intervenor to have the sale of the land under Cravens' execution set aside. But no such question is raised by the pleadings in this case, and, therefore, we will not discuss it.

The intervenor, in his plea, claims the land as against the defendant Cravens, and in the prayer to his plea asks that the sheriff's deed to Cravens may be set aside, and for general relief. If, therefore, he was entitled to a recovery of

the land in the court below against Cravens, he was also entitled, under the prayer for general relief, to the writ of possession, and to the value of the rents and profits of the land, whatever they may be. (Hardy *v.* De Leon, 5 Tex., 211; Trammell *v.* Watson, 25 Tex. Supp., 210.)

But beyond the land and the rents and profits, the recovery of the intervenor against Cravens, in the court below, could not legitimately extend.

But, in the portion of the charge of the court instructing the jury as to the character of the verdict they might find for the intervenor (in case they found for him at all) against Cravens, they were directed to withdraw from the amount of the rents and profits of the land they might find for the intervenor, the amount paid by Cravens for land at his execution sale, with eight per centum per annum from the date of payment, and to return a verdict for the balance, if any, for the intervenor against Cravens.

The evidence in the case shows that Cravens did not pay out anything on his bid for the land, but that the amount of his bid was credited on his execution.

This portion of the charge is, therefore, hypothetical, and unwarranted by the evidence in the case.

Again, the court, in the portion of the charge instructing the jury as to the kind of verdict they might find for the intervenor against Cravens, (in case they found for him at all,) directs the jury, that if they found from the evidence that Cravens had, previous to the time of the sale of the cotton under execution by the sheriff, obtained a portion of the cotton levied on, and had sold the same, and if they further found that the amount of the proceeds of the sale of cotton under the execution credited on the execution to Cravens, and the cotton obtained and sold by Cravens, were of sufficient value to satisfy Cravens' judgment, with the interest thereon and the costs in the case, and that afterwards the land was levied on and sold, that the sale of the land was

without authority, and they would find for the intervenor, Wilson, against Cravens.

It is not claimed by the intervenor, Benjamin Wilson, that Cravens obtained any of the cotton levied on, and sold the same previous to the sale under Cravens' execution, or at any other time. The cotton, when attached by the sheriff at the suit of Cravens, was left by him in the custody and care of the intervenor, who was the owner of the cotton; and it remained in his custody until Cravens had his execution levied on it, in 1868. And there is no evidence that Cravens ever obtained any of the cotton previous to the sale under his execution. The cotton was in a house on the intervenor's premises, near his dwelling-house, and had been, up to the time of the levy of the Cravens execution on it, in his care and custody; so that if Cravens obtained any of it previous to the sale, the intervenor must have known it. Yet the intervenor does not even pretend that Cravens obtained any of it.

When Cravens' execution was levied on the cotton, the sheriff says he took charge of the cotton, and that none of it was taken away previous to the sale under execution, after the levy of the execution on it.

It is manifest, therefore, that this portion of the charge of the court is also hypothetical, and wholly unwarranted by the evidence in the case, as exhibited by the statement of facts.

These instructions to the jury, in regard to what should be their verdict in case they found for the intervenor against Cravens, evidently misled them, and caused them, in part at least, to find in favor of the intervenor against Cravens the very singular verdict disclosed by the record in this case.

The verdict of the jury is, substantially, as follows: "We, the jury, find, as to the first case between Matthew J. Wilson and William Cravens, in favor of the defendant, Cravens. As to the second case, we find in favor of the intervenor, Benjamin Wilson, against Cravens, after allowing Cravens his purchase-money of $365, with interest for seven years at

eight per cent. per annum, which amounts to $571.83. We also allow Cravens the amount paid to E. S. Hearn, which is $173.96; from which we deduct the rents of said place for seven years at $100 per annum, leaving $45.79 as a balance due Cravens, and return the land to the intervenor, Wilson."

The evidence in the case shows that the jury was mistaken as to the amount bid for the land by Cravens, and credited on his execution. The jury fix the amount in their verdict at $365, when the evidence in the case shows that it was $360. This, however, is a trifling mistake in the jury.

But why, in making up their verdict, they should have allowed Cravens the $173.96 of the proceeds of the sale of the cotton under Cravens' execution, paid to E. H. Hearn on account of his having a prior lien on the cotton to that of Cravens, is incomprehensible to us. It had been paid over by the sheriff to Hearn, and could not, therefore, be taken from him, and given or allowed to Cravens, by the jury.

The verdict of the jury in this case is a very remarkable one, and, as we think, can only be accounted for on the hypothesis that they were misled by the charge of the court, and disregarded the evidence in the case.

The verdict is manifestly erroneous.

The judgment is in perfect harmony with the verdict of the jury; and the one being erroneous, it follows as a necessary consequence that the other is also.

For the several errors in the charge of the court, and the error in the verdict of the jury, and judgment of the court below, that have been examined and discussed in this opinion, the judgment of that court is reversed and the cause remanded.

REVERSED AND REMANDED.