

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711 $\mathcal{Dee}\, H\text{-}1042$

WAGGONER CARR
ATTORNEY GENERAL

February 11, 1966

Honorable Herbert Middleton
County Auditor
Taylor County Courthouse
Abilene, Texas

Opinion No. C-607

Re: Whether Taylor County
can legally pay a
short-rate cancellation
premium on an "error
and omissions" insurance
policy procured and
cancelled under the
stated conditions.

Dear Mr. Middleton:

Your recent letter to this office contained the following statement of facts:

"After the passage of Section 4 of Article 1937 as provied for by Section 1 of House Bill 125, Acts 59th Legislature, 1965 Regular Session, Ch. 456, p. 941, an 'errors and omissions' insurance policy was issued to Taylor County for the benefit of the County Clerk. On receipt of a copy of Attorney General's Opinion #C-506, the policy, on which the premium had not been paid, was returned by the County Auditor to the insurance agent for cancellation.

"In a letter (copy of which is enclosed) to the Hon. County Judge, the agent requested the County to pay a short-rate cancellation premium. . . ."

You have asked the opinion of this office as to whether Taylor County may legally pay the short-rate cancellation premium submitted by the agent who issued the policy.

The policy in question was procured pursuant to the provisions of Section 4 of Article 1937 as enacted by Section 1 of House Bill No. 125, Acts 59th Legislature, 1965, Regular Session, Ch. 456, p. 941, which reads as follows:

-2942-

"Each county clerk shall obtain an errors and omissions insurance policy, if the same be available, covering the county clerk and the deputy or deputies of the county clerk against liabilities incurred through errors and omissions in the performance of the official duties of said county clerk and the deputy or deputies of said county clerk; with the amount of the policy being in an amount equal to a maximum amount of fees collected in any year during the previous term of office immediately preceding the term of office for which said insurance policy is to be obtained, but in no event shall the amount of the policy be for less than Ten Thousand Dollars ($10,000). The premiums for said insurance shall be paid out of the funds of the county by the Commissioners Court of said county."

The clear and unambiguous language of this Section is devoid of any expression which would make the respective countie of this State responsible in damages for the errors or omissions of county clerks or their deputies. The procuring of a policy of public liability insurance cannot create a liability where there is none. Texas Prison Board v. Cabeen, 159 S.W.2d 523 (Tex.Civ.App. 1942, error ref.); Jones v. Texas Gulf Sulphur Company, Houston Court of Civil Appeals (Dec. 16, 1965).

Section 52 of Article III of the Texas Constitutio provides in part as follows:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual. . . ."

In Attorney General's Opinion C-506 (1965), we held Section 1 of House Bill No. 125 invalid because of this provision of our Constitution. We stated in said opinion that:

"As it would be in violation of Section 51 and Section 52 of Article III of the Constitution of Texas for a county to pay a claim of a person for a loss suffered by such person for some act of the County Clerk or his deputies in the performance of their official duties, it would likewise be a violation of the same constitutional provisions for a county to pay the premiums on an

insurance policy which had as its purpose the paying of a claim predicated on facts which generated no county liability. In this same connection it was stated in Attorney General's Opinion No. 0-1922 (1940) that:

"'. . . It is fundamental that the county would have no authority to insure against a non-existent liability.'"

In this context, the language of the Court in Clough v. Worsham, 74 S.W. 350 (Tex.Civ.App. 1903, error ref.) at page 354 is most appropriate:

"'. . . /T/he government itself is not responsible for the misfeasances or wrongs or negligences or omissions of duty of the sub- ordinate officers or agents employed in the public service, for it does not undertake to guarantee to any persons the fidelity of any of the officers or agents whom it employs. . . .'"

Statutes which are contra to the provisions of our organic law are void. They are no laws at all and therefore no rights may be acquired under them. Neither may acts or powers performed under an unconstitutional statute be justified or sanctioned upon the basis of its provisions. 16 Am.Jur.2d, 403-404, Constitutional Law § 177; 9 Tex.Jur. 467, Constitutiona Law § 51; 39 Tex.Jur. 21, Statutes § 8.

"The foregoing rule has been deviated from by this court where it was shown that parties had obtained judgments in causes and the Legislature had enacted what was called Stay Laws, prohibiting the issuance of executions thereon for a certain period of time, and where it was also shown that the parties had obeyed the law before it was declared invalid; and such rights acquired in such judgments are not destroyed by the period of limitation prescribed in such laws. Phillips v. Lesser, 32 Tex. 741; Sessums v. Botts, 34 Tex. 335; Cravans v. Wilson, 35 Tex. 52; Id., 48 Tex. 324; Townsend v. Quinan, 36 Tex. 548; Delespine v. Campbell, 52 Tex. 4.

". . .

"We think there exists a sound distinction between a decision which holds that rights acquired under a judgment will be protected from limitation, where the parties obey a law before it is declared void, and a decision which holds a sale made under a void statute conveys no title to the land. In the first instance the legal rights of parties already acquired are protected in spite of a void statute; while in the second instance, if the sale of land under a void statute were sustained, the parties would not only have their rights already acquired protected, but would also gain rights under a void statute. This court has held, and still holds, that original rights obtained under a judgment will be protected in spite of a void statute, but it will not extend the rule to protect rights acquired under such void statute." Sharber v. Florence, 131 Tex. 341, 115 S.W.2d 604 (1938) at p. 607 of 115 S.W.2d; see also Sessums v. Botts, 34 Tex. 335 (1870).

In the case before us, the sole authority for the procurement of the policy of insurance and the payment of the premium by the county is the statute which we have heretofore held unconstitutional. The fact that the policy in question procured and remained in force for a period of time prior to our holding cannot supplant the absence of authority to pay premium. We can find no valid basis to support the payment the premium apart from the unconstitutional statute, therefo the exception to the general rule stated above has no applic

Where the statute which authorized the procurement the policy and the payment of the premium is unconstitutiona we are without power to raise an implied contract to pay the premium for the period the policy was in force; the implied contract would run afoul of the same constitutional prohibit Edwards County v. Jennings, 89 Tex. 618, 35 S.W. 1053 (1896) Noel v. City of San Antonio, 33 S.W. 263 (Tex.Civ.App. 1895, error ref.).

In City of Tyler v. Texas Employer's Insurance Assc 288 S.W. 409 (Tex.Comm.App. 1926), the insurance corporation brought a suit to recover unpaid premiums on a policy of work compensation insurance issued to the City of Tyler covering certain employees of the city. The Court held that the Workn Compensation Act did not apply to cities; that Section 52 of Article III of the Texas Constitution denied to the Legislatu the power to include cities within the scope of the Act or au

the payment of premiums for a policy of compensation insurance. The language from page 412 of that opinion is conclusive upon the question before us:

"Viewed from another standpoint, the Legislature would have no authority to include cities and towns in the act, for the plan necessarily permits such cities and towns becoming subscribers to grant public money or thing of value in violation of the section of the Constitution already quoted. The purpose of this wholesome provision is to prevent the gratuitous appropriation of public money or property. The purposes for which public money may be expended are clearly defined by law, and a grant in aid of or to any individual, association, or corporation whatsoever is not one of these purposes, but is expressly forbidden. When the Workmen's Compensation Law is analyzed and fully understood, it is clear that to permit a municipal corporation to become a subscriber to the insurance association therein provided authorizes it to grant public money by way of premiums for insurance in aid of its employes to whom it is under no legal liability to pay. As already pointed out, the act contemplates compensation in the absence of any legal liability other than the acceptance of the plan. Cities and towns have no power to appropriate the tax money of its citizens to such a purpose. It is at best a gratuity, a bonus to the employe. The city might as well pay his doctor's fee, his grocer's bill, or grant him a pension.

"   .  .  .

"It may be conceded that those employes of a city engaged in industrial work of a proprietary nature are as much entitled to the compensation provided by the act as are the employes of strictly private corporations. This is not the question. The question is, Has the Legislature power, in view of our constitutional provisions and limitations, to authorize cities and towns to make such insurance for their employes? We have, with much hesitancy, but after due deliberation, concluded that the Legislature has no such power, and that, if it had attempted to exercise such

power, its act would have been void. The widsom of the Constitution is for the people. Expediency will not justify a violation of its provisions."

In our opinion, Taylor County may not pay the short-term cancellation premium for the policy of insurance procured by the County Clerk. The policy insured against a liability for which the county was not responsible; the premium would purchase nothing for county purposes. Under such circumstances the payment of the premium would be an unauthorized grant of public money proscribed by Section 52 of Article III of the Texas Constitution. See also Georgia Casualty Co. v. Lackey, 294 S.W. 276 (Tex.Civ.App. 1927, no writ history).

## S U M M A R Y

Section 52 of Article III of the Texas Constitution prohibits the payment of a short-term cancellation premium for a policy of insurance procured by the County Clerk of Taylor County pursuant to Section 4 of Article 1937, Vernon's Civil Statutes.

Very truly yours,

WAGGONER CARR
Attorney General

By W. O. Shultz
Assistant

WOS:ml

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Paul Phy
Kerns Taylor
John Reeves
John Banks
Malcolm Quick

APPROVED FOR THE ATTORNEY GENERAL
By: T. B. Wright